## Stewart *v.* Cross.

*Bill in Equity by Purchaser of Land, for Specific Performance.*

1. *Waiver of right of rescission.*—When a written contract for the sale of lands reserves to the vendor the right to rescind the contract, if full payment of the purchase-money is not made by a certain day, and to treat partial payments as rent money, he waives this right by continuing to receive partial payments after that day.

2. *Exceptions to register's report.*—When exceptions to the register's report under a reference are not filed in substantial compliance with the rules of practice (Rule No. 93 ; Code, 174), this court can not review the chancellor's decision overruling them.

3. *Alteration of contract after partial performance; usury.*—When a contract for the sale of lands has been taken out of the operation of the statute of frauds, by the delivery of possession and part payment of the purchase-money (Code, § 2121, subd. 5), a subsequent agreement increasing the price, by more than the addition of lawful interest, is usurious, and can not, though reduced to writing, affect the rights of the parties under a bill for specific performance.

4. *Tender of balance due by purchaser.*—A tender of the balance of purchase-money due, on the basis of the contract alleged and proved, is not essential to perfect the purchaser's right to a specific performance, when it is shown that such tender, if made, would have been refused by the vendor as full payment.

APPEAL from the Chancery Court at Montgomery.

Heard before the Hon. H. AUSTILL.

The original bill in this case was filed on the 23d September, 1879, by Winnie Cross, the wife of David A. Cross, against John H. Stewart; and sought the specific performance of a contract for the purchase and sale of a small lot or parcel of land near the city of Montgomery, particularly described in a written contract, a copy of which was made an exhibit to the bill. At the time the contract was entered

[Stewart v. Cross.]

into, the complainant was an unmarried woman, and her
name was Winnie Jackson. The bill alleged, that the contract
was made "in the fall of the year 1876," and the agreed
price was $150; that the defendant put her in possession of
the lot, and gave her a copy of the contract, or what pur-
ported to be a copy; that she continued in possession up to
the filing of the bill, erected valuable improvements, and
made partial payments from time to time, "in all amounting
to $166, or thereabouts"; that on making partial payments,
at different times, she left her copy of the contract in the
possession of the defendant, or at his house, in order that he
might enter credits for such partial payments; that the
defendant took advantage of this opportunity, and of com-
plainant's ignorance, she being unable to read or write, and
made fraudulent alterations in the contract, and false entries
of the credits, without the knowledge or consent of the com-
plainant, and with the intent to defraud her; that she did
not discover these false and fraudulent changes until informed
by her solicitor on the commencement of this suit; that she
had "paid to said Stewart more than the sum agreed on
between them, to-wit, the sum of about $166," and had
"complied, substantially and faithfully, with the said agree-
ment," and had demanded a conveyance from said Stewart,
which he refused to execute; and that he was insolvent.
As to the alterations in the contract, the bill contained the
following allegations and specifications: "Said Stewart has
changed the amount agreed upon, from $150 to $175, and
has changed the amount of the first payment, from $20, as
agreed on, and made on the 20th December, 1876, to $29.50;
and in order to conceal said changes, he has scratched out
the receipt given on the 20th December, 1876, for $20, which
was written on the back of said agreement, and has written a
receipt for $29.50, and dated the same on the 8th January,
1877; and he has changed the date of said agreement, from
the day on which the same was executed in the fall of 1876,
to the 8th January, 1877." The bill prayed, "that said
agreement be made to conform to the intention of the parties
at the time the same was executed, and the said fraudulent
alterations be decreed to be null and void, and of no effect
as to complainant; that an account be taken of the pay-
ments made by complainant to said Stewart; that he be
compelled to execute and deliver to her good and sufficient
titles to said lot, and to refund to her any amount she may
have overpaid him," and for other and further relief.

A document, partly printed and partly written, which
seems to be the original contract between the parties, is
attached to the transcript filed in this court; but the record

does not show why this was done, or that any order requiring it was made by the chancellor, as authorized by the 20th rule of practice.—Code, p. 157.    This document, which exactly corresponds with the copy made an exhibit to the bill, is signed by the complainant and the defendant; the former making her mark, which is attested by Mrs. C. A. Stewart, the defendant's wife.    It is in the following words, the written words being italicized: "Memorandum of an agreement this day entered into and concluded between John H. Stewart on the one part, and *Winnie Jackson* on the other part, witnesseth, that John H. Stewart, in consideration of *one hundred and seventy-five* dollars, has conditionally sold to *Winnie Jackson* the following real estate," describing it, and adding, "*at this date occupied by said Winnie Jackson.* The conditions of this agreement are, that *Winnie Jackson* shall pay the sum of *one hundred and seventy-five* dollars, in monthly installments as follows, to-wit: *twenty-nine and 50-100 dollars on the 20th day of December, 1876, and ten (10) dollars on the 20th day of each following month, until the whole amount is paid;* and upon payment of the same, said Stewart shall execute to the said *Winnie Jackson,* or any person she may direct, full warranty titles to the above-described property.    But, if *Winnie Jackson* shall fail to pay any of the installments as provided for in this contract, for thirty days after it becomes due, then *she* forfeits *her* rights under this contract, becomes the tenant of said Stewart, and shall remain upon said premises at a rent of $5.00 (five dollars) per month, until the amount she has previously paid shall be exhausted; and then said Stewart shall have the right to demand instant possession of said premises, and, upon failure or refusal of said *Winnie Jackson* to surrender possession, shall have the right to reject *her* or *her* tenant for unlawful detainer.    In witness whereof, we have hereunto set our hands and seals, this *8th* day of *January,* 1877."

The defendant filed an answer to the bill, in substance as follows: "It is the impression and belief of this defendant, that an arrangement was made between him and said complainant, some time in June, 1876, for the purchase of a house and lot now occupied by Cyrus Menlee, for the sum of $150; and complainant moved into said house about the same time, and lived there until an arrangement was made by which she was to take the house she now occupies, which was about the 10th August, 1876.    The price charged complainant for the house and lot she now occupies, and which is described in the bill, when the arrangement was made on the 10th August, 1876, defendant is not able to state positively; but his belief is, that it was something less than $175.    It is

defendant's recollection that said contract, a copy of which is attached to said bill, was written out on the 20th October, 1876; and it was expected that it would be signed on that day, at which date she had paid $20. It was not signed, however, until the 8th day of January, 1877, at which time she had paid $29.50; and the receipt for $20 was therefore scratched out, and a receipt for $29.50 was written on the back of the paper. All the alterations and changes made in the agreement, a copy of which is attached to the bill, were made before the same was signed, and with the full knowledge and consent of the complainant; and defendant states positively that $175 was the amount complainant agreed to pay for said house and lot at the time the contract was signed. Defendant denies that complainant has made any improvements on said premises, and denies that she has complied, 'substantially and faithfully,' with said agreement: on the contrary, he charges that she has violated the same, and has failed and refused to pay the amount embraced in said agreement. Defendant denies, also, that $166 has been paid on said house and lot by complainant, or by any one for her; and asserts that only $101, or thereabouts, have been paid on said contract, and that was not paid as agreed on in the contract. Defendant denies that said complainant ever left her copy of said contract with him: he never had the same in his hands, except in the room where complainant was, and all writing done on the same was done in her presence, and was read over to her. Defendant denies that he is insolvent, and [alleges] that he is amply able to meet any damages that may be obtained against him for the breach of said contract."

The answer contained, also, the following allegations: "Some time in January, 1877, being satisfied that the complainant would not pay the ten dollars per month as agreed on, defendant made an arrangement with her to take possession of said house and lot, and, if she would pay him seven dollars per month, that he would allow her three dollars per month as rent for said house, making the ten dollars. This was agreed to, and defendant took possession of said house and lot some time in February, 1877, and held possession of the same until some time in June, or July, 1878, when complainant notified him that she again wished to occupy it. At no time, while defendant thus had possession of said house and lot, did complainant comply with her part of the agreement, by paying seven dollars per month; but defendant, preferring to be liberal and generous, and anxious to avoid even the appearance of usury, consented that she might take possession of the house and lot again. It was during the

time defendant thus had possession of the said house that receipts were given to complainant, which embraced the three dollars rent, and which accounts for the receipts footing up a larger amount than $101. The receipts for rent were given upon the express understanding, and repeated promises of complainant, to make up the deficiencies at the next monthly payment; but this was never done."

The complainant afterwards filed an amended bill, by leave of the court, by adding the following allegations in reference to this new agreement: "Some time in January, or February, 1877, complainant made an agreement with said Stewart, by which possession of said premises was to be given to him, at the rent of three dollars per month, which was to be applied to the payment of balance of said amount due on said house and lot; and under said agreement she delivered possession of said house and lot to said Stewart, who retained possession of the same for eighteen months, and applied the rents thereof to his own use, never paying complainant anything therefor." The defendant thus answered the amended bill: "Defendant admits that, for an accommodation to the complainant, and with the view of enabling her to pay for the place described in the bill, he took possession of said premises some time in March, 1877, with the express understanding that she was to be allowed three dollars per month for the use of the same, provided she would pay him seven dollars per month, so as to make the ten dollars per month stated in the agreement; and if she failed to pay the seven dollars per month, she should not be allowed anything for rent, but should have the privilege and right to the occupancy of the house until the amount paid by her was exhausted in rent. Defendant denies that he had the possession of said house and lot for the period of eighteen months, and that he received any rents from the same."

The complainant's own deposition was taken in her behalf, in which she testified to the facts substantially as alleged in the bill; and her husband, whose deposition was also taken for her, testified to a demand by him, for his wife, of a conveyance from the defendant, and its refusal. The defendant testified, as a witness for himself, to the facts and transactions as stated in his answer; and his wife, whose deposition was taken in his behalf, corroborated his testimony as to all matters which occurred in her presence. This was all the testimony in the case. The cause being submitted for final decree, on pleadings and proof, the chancellor ordered an account to be stated by the register, to ascertain the amount of payments which had been made by the complainant, and

[Stewart v. Cross.]

directed him to charge the defendant with the rent of the premises, at the rate of three dollars per month, during his possession under the new agreement. The register reported that the payments made by the complainant amounted to $101, and that the defendant held possession of the property for twenty months, which, at three dollars per month rent, amounted to $60 more ; making in all $161, as the amount of credits to which the complainant was entitled. The defendant filed the following exceptions to the register's report : " The defendant insists that the evidence offered before the register was within the scope of the reference. If the contract attached to the bill cuts any figure in the cause, the testimony of defendant was competent, to show the fair, just and equitable *status* of the account between the parties. It seems impossible to arrive at a correct conclusion, unless the whole contract is looked to ; and any evidence that throws light upon it is competent. The defendant excepts to the report of the register, and says that he erred in overruling the testimony of J. H. Stewart, marked 1, 2, 3, and 4 ; and he excepts, also, because the register's report allows the complainant twenty months' rent." The chancellor overruled the exceptions, and confirmed the report ; and he rendered a final decree for the complainant, directing the defendant to execute and deliver to her, within ten days, a conveyance of the property ; holding that $150 was the agreed price, and that it had been fully paid. The final decree, and the overruling of the defendant's exceptions to the register's report, are now assigned as error.

JNO. G. FINLEY, and WATTS & SONS, for appellant.

E. A. GRAHAM, and EDWIN F. JONES, *contra.*

STONE, J.—The testimony is in conflict, whether the purchase price of the lot in controversy was one hundred and fifty, one hundred and sixty, or one hundred and seventy-five dollars. The original contract is sent up with the record, and we have examined it with some care. Subjected to a magnifying glass, the word *sixty* is discernible, under the word *seventy.* Some thing has been written under the word *five,* in each place where it occurs. It was possibly the sum repeated in figures, as there remains, not entirely obliterated, what resembles a mark of parenthesis. The paper presents some note-worthy features. The signature of the subscribing witness appears to be in the same ink as the body of the instrument, which, it is shown, was filled up in October, 1876. The re-written words, showing the alterations, and

the signatures of the contracting parties, appear to be in similar, yet darker ink. An indorsement on the contract, signed in the name of Stewart, is in this language: "Paid to date, July 31st, 1877, $84.00; balance due, $81.00. J. H. Stewart." This was about seven months after the contract bears date. Yet the two sums stated, $84 and $81, foot up $165, instead of $175, stated in the contract, as it is alleged to have been signed near seven months before. We simply state these appearances, without intending to comment further upon them. We are clearly convinced the chancellor erred in ascertaining the agreed purchase-money to be one hundred and fifty dollars. Stewart and wife each testify, the agreed sum was one hundred and sixty dollars, and the paper evidencing the contract bears them out.

If Stewart ever had the right, under the writing, to renounce the contract of sale, and treat the partial payments as rent money, he waived that right by continuing to receive partial payments on the purchase. He cannot now be heard to assert it.—*Acker v. Bender*, 33 Ala. 230; 1 Brick. Dig. 396, § 276.

The exceptions to the register's report, which were overruled by the chancellor, were not so filed as that we can review the decision.—Rule 93 of Chancery Practice, Code, p. 174.

It was, and is claimed, that what may be called the substituted contract, of January 8th, 1877, by which the purchase price was fixed at one hundred and seventy-five dollars, instead of one hundred and sixty, the originally agreed price, must control in the decision of this cause. The contract had been taken out of the operation of the statute of frauds, by placing the purchaser in possession, and receiving part payment of the purchase money.—Code of 1866, § 2121, subd. 5. That being the case, the terms of the agreement to forbear were usurious, and can not be enforced.

The defendant in the court below, appellant here, claims, first, that the purchase-money agreed to be paid to him was $175. In the second place, he claims, that by the terms of the contract, Winnie Cross, *nee* Jackson, forfeited her contract as purchaser, and became a tenant of Stewart, with authority to occupy as such, until she was reimbursed the purchase-money she had paid, computing the value of her use and occupation at five dollars a month. We have shown above that neither of these positions is tenable. But their assertion proves that a tender of any balance due, on the basis of $160 as the agreed purchase price, should there be any thing found due, would have been refused by Stewart as full payment.

[Jackson v. Clopton.]

In the present state of the record, we can not finally dispose of the case to our satisfaction.

Reversed and remanded.