(107 So. 50)

## HAWKINS v. COSTON. (6 Div. 535.)

(Supreme Court of Alabama. Jan. 14, 1926.)

1. **Specific performance** ⬤➡121(11)—**Evidence held to show lessee to be entitled to warranty deed on completion of payments under the lease as provided therein.**

Under contract providing for warranty deed by lessor to lessee, if all payments have been made as provided during full term of lease, and for termination of lease and restoration of premises to lessor on failure to make payments, evidence as to payments under the lease *held* to show that lessee, on offering to pay whatever money was due lessor, was entitled to a warranty deed to the premises.

2. **Vendor and purchaser** ⬤➡214(1)—**Forfeiture of contract prohibiting transfer without consent of lessor, and providing for deed to lessee on termination, not presumed from rental of premises by lessee.**

Under contract prohibiting transfer of lease without consent of lessor, and providing for termination of lease on failure to perform agreements thereof, but, if fully performed, lessor was to execute warranty deed to lessee, a forfeiture will not be presumed from rental of premises by lessee; intention being merely to prevent transfer of contract to purchase without lessor's consent.

3. **Vendor and purchaser** ⬤➡101—**Forfeiture of contract for breach of conditions, acquiesced in by lessor, not permitted.**

Where lessor paid insurance and taxes under lease requiring lessee to pay such amounts, but never requested lessee to repay amounts or insisted on forfeiture by reason of nonpayments, equity will not permit lessor to forfeit lease without notice to lessee that strict compliance will be required, on theory that lessor

is estopped from enforcing forfeiture until notice to lessee of such intention.

Appeal from Circuit Court, Jefferson County; W. M. Walker, Judge.

Bill in equity by C. W. Hawkins against W. L. Coston. From a decree denying relief, complainant appeals. Reversed and remanded.

The contract exhibited with the bill is as follows:

"In consideration of $100 cash, paid, by the party of the second part, and the sum of $20 and interest on the whole amount unpaid, which is evidenced by notes, to be paid by the party of the second part to W. L. Coston, on the 14th day of each succeeding 55 months after the date hereof, said W. L. Coston (hereinafter called the party of the first part) hereby leases unto C. W. Hawkins (hereinafter called party of the second part) the following described lot of land in Bessemer, Jefferson county, Alabama, to wit: Lot No. 19 in block 446, according to the map and survey of the Bessemer Land & Improvement Company. The term of this lease shall be for as many months as there are installments to be paid.

"If any of said monthly intallments are not paid within 60 days after the same become due, or if any other agreement on the part of the party of the second part herein contained is not performed, then this lease shall terminate at once, and all rights of the party of the second part hereunto shall cease, and the party of the first part shall thereupon become entitled to the possession of said land without any accountability to the party of the second part for any sum paid by such party of the second part; it being expressly agreed that all sums paid hereunto are for the rent of said land and for no other purpose. Any waiver on the part of the party of the first part of his right to forfeit this lease for any default shall not be a waiver of his right to forfeit the same for any subsequent default. All assessments for municipal and county improvements on the above-described property, made after the execution of this contract, shall be paid for by the lessee. It is further understood and agreed party of the second part will pay all state, county, and municipal taxes assessed against said property, and, should he fail to do so, the party of the first part may at his option pay off same and charge to the party of the second part. It is further understood and agreed that the party of the second part will keep said property insured at its insurable value in favor of the party of the first part as his interest appears, and, if the party of the second part fails to do so, party of the first part may insure said property for his own benefit, and charge cost of same to the party of the second part.

"No transfer of this lease contract shall be recognized by, or binding on, said W. L. Coston; unless his consent thereto is indorsed in writing hereon.

"It is agreed between the parties hereto that, if the party of the second part shall make all of the payments herein provided to be made during the full term of this lease, the party of the first part will, when all of said installments have been paid, without further payments or consideration, execute a warranty deed to the party of second part of said lot of land.

"Executed this 14th day of May, 1917.
                                    "W. L. Coston."

T. J. Lamar and W. A. Weaver, both of Birmingham, and McEniry & McEniry, of Bessemer, for appellant.

Under the evidence, complainant was entitled to relief. Barton v. Broyles S. & F. Co, 212 Ala. 658, 103 So. 854. Equity will relieve from the breach of a condition for payment of taxes, as long as the same can be fully compensated for. Buckley v. Beigle, 8 Ont. Rep. 85; Muller v. Earle, 35 N. Y. Super. Ct. 473; Planters' Ins. Co. v. Diggs, 8 Baxt. (Tenn.) 563; Tibbetts v. Cate, 66 N. H. 550, 22 A. 559; Eichenlaub v. Neil, 10 Ohio Cir. Ct. R. 427; Bacon v. Park, 19 Utah, 246, 57 P. 28; Giles v. Austin, 62 N. Y. 486. If the lessor by his acts leads the lessee to believe that strict performance will not be insisted upon, equity will not permit the lessor to take advantage of forfeiture provisions without notice to lessee. McGinnis v. Knickerbocker Ice Co., 69 L. R. A. 833, 851, note; Morris v. Green, 75 Ark. 410, 88 S. W. 565; Hukill v. Myers, 36 W. Va. 639, 15 S. E. 151; Franklin v. Long, 191 Ala. 310, 68 So. 149; Attalla M. & M. Co. v. Winchester, 102 Ala. 184, 14 So. 565; Pomeroy's Eq. Jur. (4th Ed.) 451.

Huey & Welch, of Bessemer, for appellee.

Where forfeiture is occasioned by nonperformance of a condition precedent, equity will not relieve the vendee from the forfeiture. Barton v. Broyles S. & F. Co., 212 Ala. 658, 103 So. 854; Gregory v. Wilson, 9 Hare, 682; Craft v. Goldsmid, 24 Beav. 312; 1 Pomeroy (4th Ed.) 708. Where all the covenants of the lease have been breached, forfeiture will not be relieved against. 1 Pomeroy (4th Ed.) 708; Palmer v. Ford, 70 Ill. 369; Peachey v. Somerset, 1 Strange, 447; 2 Leading Cases in Eq. 2014, 2023, 2044; Seton v. Slade, 2 L. C. in Eq. 1042, 1132; 11 Michie's Ala. Dig. 987.

THOMAS, J. The appeal is from a final decree dismissing complainant's bill. The appellant filed bill against appellee, alleging, among other things, that the parties entered into a contract in writing as to the purchase of lands described on the terms indicated. The consideration was averred to have been $100 cash and the execution of fifty-odd promissory notes of $20 each, payable monthly with interest. It is further averred that appellant paid 52 of said notes, the last date of payment being February 27, 1922, and that the other 3 notes have been discharged by the payment of certain rents to appellee by Moody & Co., appellant's agent, but that the said agent did not secure said notes when the

payments were made, and that appellee still has them in his possession. The insistence of appellant is that he was entitled to have executed to him a warranty deed to the property described in said contract by appellee, and that, though demand has been made for the execution of the same, it has been refused by appellee; that appellant prayed for an accounting as necessary, and offered to pay any amount ascertained to be due on said accounting, and also sought relief to the end that title might be vested in him, and prayed general relief. The testimony discloses that appellee did execute the contract of sale, and that appellant executed the notes referred to, as appears in the answer of appellee.

Appellee contends in his pleading that he was under no obligation to execute a deed until appellant had complied with all the provisions of the contract; that it had not been complied with, in that appellant had not paid notes, taxes, and insurance, and that appellee had elected to cancel said contract and treat the payments made as rents for said property; that appellant had been let into possession, but appellee neither confessed nor denied as to whether Moody & Co. were appellant's agents to collect rents from the latter's subtenants. Appellee further contends that on January 1, 1922, complainant had made a total failure to pay his notes, taxes, and insurance; that appellee canceled said lease and took possession of said property, and made extensive improvements thereon; that thereafter Moody & Co. became his agents and paid him the rent collected from said tenants; and appellee admits that he had refused to execute a deed to appellant, and denies that appellant had any right to an accounting.

The testimony discloses that Mr. Wade was a general agent for Moody & Co.; that he made up the balance sheets of the rental accounts between appellant and said company, beginning in 1920, which original balance sheet was introduced in evidence; that he knew E. M. Jenkins and Ed Ward, who occupied the premises, and they were tenants of appellant, C. W. Hawkins; that at the beginning of the account Will Fleming, the tenant of appellant, occupied the premises; that Fleming later moved out, and Jenkins moved into the house thus vacated by Fleming; that said tenants paid rent to Moody & Co. for appellant, Hawkins, in January, 1922; that they remained in the house as tenants until the account was closed in October, 1922; that the items collected were paid over by the witness to Bessemer National Bank for the account of appellant, Hawkins. This witness further testified that he did not know where said Hawkins was in January, February, or March, 1922, but that the appellee notified him to change the account from C. W. Hawkins to that of appellee, and that, though he continued to collect rents from said tenants

as theretofore, he paid the money over to appellee instead of appellant; that the rent account on Moody & Co's. books was changed to Coston in February, 1922; that he began the collection of the rents July 1, 1921, and paid various amounts to C. W. Hawkins, the appellant, as above stated, ranging from $13.-95 a month to $19.80 a month; but that, after February 2, 1922, he paid the rents to Coston, though Hawkins did not instruct him to do so—that is to say, he never paid Coston any money by order of Hawkins.

The evidence shows that appellant was an old man, earning his living by mining and preaching, and that during the month of February, 1922, he was temporarily out of the state; that he rented the property to Ed Ward and E. M. Jenkins, and instructed Moody & Co. to collect the rent, deposit the proceeds in the bank to his credit, where his notes to Coston were payable. Several of the exhibits in evidence bear the indorsement of payment by Coston, viz.: Exhibit 4, for note No. 52; Exhibit 11, for note No. 50; Exhibit 12, for note No. 51; Exhibit 10, for note No. 19—all of which notes are signed "Paid" by W. L. Coston as of February 27, 1922, and which said notes were given to appellant by Bessemer National Bank. That is to say, appellant's evidence showed that, when the contract of sale was made, he paid $100 in cash, and thereafter paid all the notes except the last three; that the appellee did not tell appellant how much he owed when the latter asked for a statement, but claimed about $600; that at such time one Mr. Lewis, at the bank, was willing to lend appellant enough to pay whatever was due Coston on the contract.

The appellee introduced three unpaid notes, and testified he furnished Lewis, at the bank, a statement of the balance due on December 22, 1921, which statement he attaches as an exhibit to his testimony, of taxes and interest amounting to $119.39, insurance and interest $35.34, several notes of $20.94 and interest, repairs aggregating $300, and taxes and interest for the year 1922. Appellee testified, or his answer so shows, that the repairs were made after appellant's contract had been declared forfeited. Appellee further testified that he elected to cancel said contract on February 2, 1922, as the funds of Hawkins, appellant, deposited in the said bank were tied up by garnishment, and said bank returned notes numbered 49, 50, and 52, on February 20, 1922, and on February 27, 1922, he learned from Lewis that the garnishment had been settled, and he presented his notes for collection, and they were paid; that he could not find appellant in March, 1922, and that he canceled the contract and made repairs on the house between the 1st and 15th of April, 1922; that he told Moody & Co., on account of Hawkins being garnished at the bank, not to make any more deposits with the bank, and that Moody

& Co. accounted to him, appellee, after the 1st day of February, 1922. Appellee testified on cross-examination:

"I placed the notes in the bank for collection, and the bank made the collections and applied to my credit. I did not notify the bank to not make any further collections on the notes. When I canceled the lease, I did not write Hawkins a letter and address it to him in the United States mail to his last-known address. I could not find out where he was. But I did not try to reach him by addressing a letter to him at Bessemer. When I first knew Hawkins he was here at Bessemer. I did not inquire of his daughter where he was. I did not inquire of Ed Ward or E. M. Jenkins where he was. I did not know, prior to March 1, 1922, that E. M. Jenkins or Ed Ward were tenants of C. W. Hawkins. The place was occupied in 1921. I had occasion to pass by the property in 1920, and I suppose it was rented out in the latter part of 1920; that is, it was occupied. I could not say about its being rented out. During either of those years I made no inquiry to ascertain if it was rented out. When I got my statement from Mr. Moody, after I elected to cancel my lease, I learned that E. M. Jenkins and Ed Ward were tenants of Hawkins. I did not dispossess them, but let them remain in the house. They continued to pay the rent to Mr. Moody for some time. I never knew the tenants, and paid no attention to them; in fact, I did not have any conversation with them. I left that entirely with Mr. Moody. I did not elect to cancel the lease for failure to pay the taxes, during the years 1917, 1918, 1919, 1920, and 1921. Neither did I elect to cancel the lease at the time when I paid the insurance during the years 1917, 1918, 1919, 1920, and 1921. I do not know the amount that Hawkins was garnished for. * * *

"The improvements that I put upon the place were not placed there until after I canceled the contract. I did not furnish Hawkins an itemized statement of the improvements put upon the place. As well as I remember, when I canceled the contract, the insurance had been paid by me. These policies run three years, and when they are out they are renewed by me. I do not remember anything about whether the insurance was due at that time or not. I canceled the contract on the account of the insurance, taxes, and the balance on the notes, the whole thing.

"Q. When did you pay insurance on the property last before the contract was canceled? When would the premium again be due? A. Be due three years after the last date.

"Q. How much was the insurance? A. $15.50 for each three years, and it was due, according to my best judgment, December 2, 1921."

Further testifying on cross-examination, the witness said:

"The taxes for 1922 had accrued but were not payable until October, 1922. The taxes for 1921 had been paid on December 22, 1921. I don't remember the notes numbered 49, 50, and 51 were paid at the same time the note numbered 52 was paid or not."

Appellee's pleading is to the effect that, on January. 1, 1922, he elected to and did cancel "said lease, and he retook possession of the property and made extensive improvements thereon at a cost of, to wit, $300," etc. It follows that the improvements were not made until after the alleged cancellation, and that the 3-year insurance policies were not due— the last money paid on insurance, $15.50, being on December 2, 1921, and the taxes for 1922 were not due until the latter part of that year.

[1] Under the pleadings and facts disclosed by the record, and the equitable principles announced and applied in Barton v. Broyles S. & F. Co., 212 Ala. 658, 103 So. 854, the appellant is entitled to the relief prayed or embraced in the general prayer.

Appellant offers to pay whatever money may be found due appellee, and to do equity. The facts in this case bring it within the just principles set forth by Mr. Justice Sayre in Barton v. Broyles S. & F. Co., supra, wherein, among other things, he said:

"Whatever may be the rule of the law courts in dealing with such contracts our judgment is that, on the facts averred, appellant is entitled in equity to be relieved of the forfeiture upon his offer to do equity. When 'the stipulation concerning payment is only a condition subsequent, a court of equity has power to relieve the defaulting vendee from the forfeiture caused by his breach of this condition, upon his paying the amount due, with interest, because the clause of forfeiture may be regarded as simply a security for the payment.'"

See, also, Lowery v. May, 213 Ala. 66, 104 So. 5.

[2, 3] We may add to the foregoing that there is nothing in the insistence that the forfeiture of the contract was justified by the rental of the premises. The court will not presume a forfeiture, and the terms of the contract were to the effect that no transfer of the lease shall be recognized by or binding on Coston "unless his consent thereto is indorsed in writing thereon." It is apparent that the intent of the parties was to prevent appellant from transferring the contract of purchase without Coston's consent. The insurance and taxes paid by Coston can be ascertained, and his full compensation therefor with interest be required to the extent the same was for the benefit of Hawkins. As to these items, under the evidence, from the beginning appellee had paid the same, and has never requested that the appellant repay the amounts or insisted upon a forfeiture by reason of nonpayment by Hawkins. The general rule in such matter is that, if the lessor by his acts leads the lessee to believe that strict performance of the agreements in the contract will not be insisted upon, equity will not permit the lessor to take advantage of forfeiture provisions in the contract without notice to the lessee that strict compliance will be required—on the theory that the lessor is estopped from enforcing the forfeiture provisions until he has notified the other party

that he intends to do so. It would be inequitable for one party to a contract to lull the other party to sleep by numerous waivers of the provisions of the contract, and then, after the property has been practically paid for, change his position and insist on the forfeiture and retake the property. Franklin v. Long, 191 Ala. 310, 68 So. 149; Attalla Co. v. Winchester, 102 Ala, 184, 14 So. 565; Zirkle v. Ball, 171 Ala. 568, 54 So. 1000; Stewart v. Cross, 66 Ala. 22; Davis v. Robert, 89 Ala. 408, 8 So. 114, 18 Am. St. Rep. 126; Hurst v. Thompson, 73 Ala. 156; Acker v. Bender, 33 Ala. 230; Andrews v. Tucker, 127 Ala. 613, 29 So. 34; Lowy v. Rosengrant, 196 Ala. 337, 345, 71 So. 439; Blackburn v. McLaughlin, 202 Ala. 434, 80 So. 818; Pom. Eq. Jur. (4th Ed.) par. 451.

Under the law and the facts, the decree is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.