79 So.2d 3

Cora Lee MOONEY et al.

v.

Edith V. WEAVER.

2 Div. 322.

Supreme Court of Alabama.

March 24, 1955.

Sam Earle Hobbs & Graham Kirkpatrick, Selma, for appellants.

Pitts & Pitts, Selma, for appellee.

MAYFIELD, Justice.

This is an appeal from a final decree of the Circuit Court of Dallas County, Alabama, in equity.

On December 11, 1944, appellee, as lessor, and Cora Lee Mooney and N. O. Mooney, as lessees, entered into a lease contract for a certain tract of land in Dallas County, Alabama. The lease was for a period of five years beginning on January 1, 1945, at an annual rental of $400, the first annual payment due on March 1, 1945, and a payment of equal amount due on January 1 each year thereafter throughout the term of the lease. Lessees gave to appellee their five promissory waive notes evincing said rentals. The contract provided that if the lessees failed to pay such notes as they matured that appellee, at her option, might declare the lease null and void and might enter upon and take possession of the premises. The lease contract contained a further clause granting the lessees an option to purchase the tract of land for $6,000 at any time all rent notes were paid and before December 1, 1949.

Cora Lee Mooney and N. O. Mooney went into possession of the premises and remained in uninterrupted possession throughout the term. On several occa-

sions, during the term of the lease, the lessees failed to make payment of rent on the date due. On the occasion of each default appellee later accepted payment in full of the past-due rent and took no steps to exercise her option to terminate. Cora Lee Mooney and N. O. Mooney did not exercise their option to purchase before December 1, 1949.

On December 30, 1949, appellee entered into a new written lease contract with appellants. This contract was identical in terms to the prior contract, except that N. A. Mooney was added as a lessee, and the purchase price was increased to $6,500 in the purchase option clause. The new lease was to begin on January 1, 1950, and to end on December 1, 1954. Cora Lee Mooney and N. O. Mooney remained in uninterrupted possession and N. A. Mooney went into possession for the first time under the contract of December 30, 1949.

On January 1, 1951, appellants failed to pay the rent note in the amount of $400 which was due on that date. On April 4, 1951, appellee instructed her attorney, the Honorable Harry W. Gamble, to write appellants concerning the past-due rent. Mr. Gamble communicated with Cora Lee Mooney and N. O. Mooney by mail on that date and insisted that the Mooneys see him at once about the payment of the note so there would be no forfeiture. On April 7, 1951, N. O. Mooney made a partial payment of $200 directly to the appellee. The payment was accepted and appellee told appellants to pay the balance as soon as they could, or words to that effect.

In April or May, 1951, appellee proposed to N. O. Mooney that she refund the partial payment, give him a reasonable time to get off the place and that he give her back the contract. N. O. Mooney made a counter proposal that he pay in full the balance under the contract but made no tender. According to Mr. Mooney's testimony, appellee replied: "I can get a lot more money than that for it" and said, "let me go back and talk to Frank [G. Frank Cothran, Jr.] and I will drop you a card."

On May 12, 1951, G. Frank Cothran, Jr., the nephew of appellee, notified appellants by mail that he was handling appellee's properties. On July 13, 1951, appellee gave to Mr. Cothran, a written power of attorney to handle all business in connection with this realty. Mr. Cothran testified that during July, August and September he wrote several letters to one of the appellants concerning the past-due rent, to which letters he received no reply. On December 18, 1951, pursuant to instructions from Mr. Cothran, Pitts and Pitts, attorneys for appellee, notified appellants by mail that the contract had been placed in their hands, that appellants had failed to pay the rent due under the contract, and demanded that appellants surrender possession of the premises on January 1, 1952, and pay the accrued rent. The form of this letter from attorneys for appellee substantially complied with provisions of Code of 1940, Tit. 31, § 6, concerning notice to quit for breach or default of terms of lease. A few days thereafter, N. O. Mooney and N. A. Mooney met with attorneys for appellee and G. Frank Cothran, Jr. Messrs. Mooney were informed that the contract of December 30, 1949, was terminated and void and that appellee would take possession on January 1, 1952. N. O. Mooney expressed the opinion that since preparations had already been made for the 1952 crops, it would be unfair to terminate the lease. G. Frank Cothran, Jr., offered to enter into a new lease with appellants for one year only. The evidence is in dispute as to whether Messrs. Mooney both agreed to the proposal. Attorneys for appellee subsequently prepared the proposed new lease and submitted a copy to the appellants. Appellants did not then execute the contract and have since refused to do so.

On January 2, 1952, appellants paid $380 to attorneys for appellee and on January 14, 1952, made another such payment of $220. Appellants contend that these amounts represent payment of the balance due for 1951, and advance payment of rent for 1952, under the contract of December 30, 1949, which continued in effect. Appellee contends that the amount paid in advance was paid under the new one-year lease, the contract of December 30, 1949, having been terminated.

On May 16, 1952, appellee filed a bill of complaint in the Circuit Court of Dallas County, in Equity, praying for a declaratory judgment concerning the status of the parties under the contract of December 30, 1949. Appellants filed demurrers, answer, cross-bill in response thereto, and G. Frank Cothran, Jr. was made a cross-respondent in the cross-bill which contained allegations that he wrongfully urged and induced appellee to terminate the contract.

Appellants' demurrers were overruled and on motion of G. Frank Cothran, Jr., and appellee, Cothran was stricken as a party cross-respondent. On January 14, 1953, the cause was heard on its merits and submitted for final decree. On February 16, 1953, the court handed down its decree declaring that the lease and option were terminated, null and void. It was from that decree that this appeal was taken.

We first consider appellants' contention that appellee having an adequate remedy at law, there was no equity in the bill and demurrer thereto should have been sustained. Appellants rely on previous cases wherein it was held that a declaratory judgment is not ordinarily available if another remedy exists which affords adequate relief. L. W. Richardson & Co. v. Town of Hamilton, 248 Ala. 585, 28 So.2d 924; Goltsman v. American Life Ins. Co., 248 Ala. 151, 26 So.2d 596; Donoghue v. Bunkley, 247 Ala. 423, 25 So.2d 61; Gambill v. Greenwood, 247 Ala. 149, 22 So.2d 903; Glass v. Prudential Ins. Co. of America, 246 Ala. 579, 22 So.2d 13; State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 11 So.2d 342; State v. Inman, 238 Ala. 555, 191 So. 224. By amendment of October 9, 1947, the following was added to Code 1940, Tit. 7, § 167:

"The remedy provided for by this article shall not be construed by any court as an unusual or extraordinary one but shall be construed to be an alternative or cumulative remedy."

Appellants further insist that the amendment constitutes an exercise of judicial powers by the Legislature in violation of the Constitution of 1901, Art. 3, § 43.

Since the enactment of the 1947 amendment, this court has held that relief under the Declaratory Judgments Act does not depend on the absence of another adequate remedy. Dozier v. Troy Drive In Theatres, 258 Ala. 417, 63 So.2d 368; Wolff v. Woodruff, 258 Ala. 1, 61 So.2d 69; Brantley v. Flowers, 254 Ala. 448, 48 So.2d 532. We view the amendment as a further enlargement of the scope of the court's powers under the Act. As such, it does not impinge on the powers reserved to the judiciary by the Constitution.

In Alabama State Milk Control Board v. Graham, 250 Ala. 49, 33 So.2d 11, it was held that if a complaint states the substance of a bona fide justiciable controversy which should be settled, a cause of action for a declaratory judgment is stated, and demurrer thereto should be overruled. The present complaint comes within the above general statement of the rule.

Appellants maintain that on its face the contract is severable and divisible. And, since no allegations were made as to breach of conditions precedent to the right to exercise the option, the bill of complaint praying for a declaration that the entire contract be terminated, was without equity and the demurrer thereto should have been sustained.

An option to purchase inserted in the same instrument with a demise may be independent or may fall with the estate demised on a forfeiture of the lease. The usual rules of construction are to be applied in ascertaining the meaning of the instrument. 51 C.J.S., Landlord and Tenant, § 87, p. 647. In determining whether a contract is severable or divisible, this court has applied the rule that if the consideration is single the contract is entire, but if the consideration is apportioned the contract will be regarded as severable. City of Albany v. Spragins, 208 Ala. 122, 93 So. 803; Kirkland v. Oates, 25 Ala. 465. Appellants' obligation to pay the rent required under

the lease constituted the only consideration for the option as well as the lease. The lease and option were clearly part of one and the same transaction and should be regarded as one agreement. It must result that if the lease be terminated the option to purchase also falls.

■ In the absence of a provision to such effect, non-payment of rent does not as a general rule give to the lessor the right to terminate a lease. Hyde v. Bains, 247 Ala. 8, 22 So.2d 324; Myles v. Strange, 226 Ala. 49, 145 So. 313. There is no good reason, however, why the parties may not freely stipulate for termination of the lease upon non-payment of rents. Cirlot v. Stevens, 222 Ala. 271, 132 So. 163. The contract between appellants and appellee provided that if appellants failed to pay the rental notes as they matured, appellee, at her option, might declare the lease null and void and enter upon and take possession of the premises. It is clear that such provisions are valid and enforceable.

The question next raised is whether appellee waived her right to terminate by past acceptance of late payments.

In 32 Am.Jur., Landlord and Tenant, § 882, p. 748, it is stated:

"* * * Mere leniency on the part of a lessor in exacting the prompt payment of rent, * * * will not preclude him from enforcing a forfeiture for the subsequent non-payment of rent, for, as has been well said, if the leniency of a landlord in not insisting upon the strict payment of rent according to the terms of a lease would be a defense to an action to recover possession of the premises, then, indeed, the lot of a tenant might often be a hard one, since for their own protection landlords would insist upon strict compliance with the contract."

■ This court has previously held, however, that if by his acts a lessor leads the lessee to believe that strict performance of the agreements in the contract will not be insisted upon, equity will not permit the lessor to take advantage of the forfeiture provisions in the contract without notice to the lessee that strict compliance will be required. Hawkins v. Coston, 214 Ala. 135, 107 So. 50; Humphrey v. Humphrey, 254 Ala. 395, 48 So.2d 424, 31 A.L.R.2d 315.

■ To establish that appellee was precluded from exercising her right to terminate, the burden was on appellants to show that reliance on appellee's course of dealing would induce the belief that a delay in the payment of rent for a period of eleven months, from the date due, would not be such a delay as would cause appellee to insist on termination. In this respect appellants failed.

■ Assuming that appellee's indulgence under the lease of December 11, 1944, may presently be considered, it is clear that appellants had been late in making payments in prior years and that such payments had been accepted by appellee. It may well be said that this course of dealing precluded appellee from insisting on strict compliance with the terms of the lease. We are not concerned, however, with insistence upon strict compliance but rather with non-compliance of almost a year's duration. As stated in 51 C.J.S., Landlord and Tenant, § 117d (2), pp. 708, 709, 710:

"* * * Even where it is held that prior indulgence in collecting rent will preclude enforcing forfeiture for delayed payment, the rule applies only to short delays induced by the lessor's prior indulgence, and not to long, unwilling, and forced indulgence on the lessor's part. * * *"

■ That prior payments had been accepted after the date due is not enough in and of itself to bring the present case within the rule of Hawkins v. Coston, supra. The past conduct shown must have been such that reliance thereon would induce the belief that a delay in payment of over eleven months would not cause the lessor to terminate the contract. We do not believe, for example, that acceptance of prior payments a week past the due date would

induce the belief that a delay in payment of six· months would constitute satisfactory compliance with the requirements of the contract. It follows that evidence revealing previous acceptance of "late" payments is not a showing of past conduct which, by itself, reasonably supports a belief that non-payment of rent for almost a year beyond the date due would be satisfactory compliance with the terms of the contract.

Nor do we believe that the conduct of appellee and her agents during 1951 was such as to constitute a waiver of the right to terminate. Appellee's statement on April 7, 1951, that appellants should pay the balance due "as quick as you can" is urged by appellants as an indefinite extension of time during which payment could satisfactorily be made. Prior to that statement, appellee's attorney communicated with appellants insisting that action be taken to avoid forfeiture. The evidence supports a finding that on several occasions subsequent to the date of that statement, appellee's agent had written to appellants concerning the past-due rent and had received no reply. A course of conduct is revealed which was characterized by continuous efforts directed toward the collection of the past-due rent. Considered in the light of these communications before and after April 7, 1951, appellee's statement should reasonably be interpreted more as an admonition that payment should be made promptly than as a waiver of her right to terminate upon continued default for a period of over eight months thereafter. We conclude that appellee's course of dealing did not preclude her from terminating the lease in December, 1951.

After careful consideration of all of appellants' numerous assignments of error and the record as a whole, we are clear to the conclusion that the Chancellor committed no substantial error that affected the outcome of this suit. Accordingly, the decree of the Circuit Court, in equity, is due to be, and is, hereby affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.