Appeal by J.W. Eurton and Margaret B. Eurton from a judgment entered by the trial court ordering them to specifically perform under a lease-sale agreement by executing and delivering to Madge E. Smith a deed conveying real estate. We affirm.
Mrs. Smith filed this action for specific performance in the trial court to have the Eurtons execute and deliver a deed conveying to her the title to a tract of land described in a lease-sale contract. The complaint alleged that Eurton agreed to lease the described real estate to Mrs. Smith for a consideration of $4,000 ($300 paid in cash and the balance divided into 72 payments of $63.09); and at the end of the rental period, if Mrs. Smith had complied with the conditions of the lease-sale contract, Eurton would apply the $4,000 rental as payment *Page 325 
for the real estate and execute a deed conveying title to her. Mrs. Smith claimed she complied with all of the conditions and made timely tender of the $4,000; but Eurton refused to accept the money and to execute the deed. The Eurtons answered generally, and sought affirmative relief, by cross-complaint, to have the agreement declared null and void for violations of, and noncompliance with, the terms of the lease-sale contract by Mrs. Smith, particularly nonpayment of the monthly rental. The Eurtons requested that monies paid Mrs. Smith and the value of labor services rendered by her husband, for which credit was given as rental payments, be declared such under the terms and conditions of the agreement and not consideration for purchase.
The action was heard by the trial court without a jury; and the following is its findings and conclusions as set forth in the judgment:
 "Upon consideration of the testimony and exhibits in support of the pleading, the Court finds that on June 15, 1971 that plaintiff, Madge E. Smith, and the defendants entered into an agreement for the purchase of certain property in St. Clair County, Alabama, as set out and described in said agreement (Plaintiff's Exhibit # 1). Said agreement contains a provision stating that a promissory note bearing interest at seven per cent was given by plaintiff to further secure said agreement. Said note was offered in evidence as Defendant's Exhibit # 1.
 "The evidence and exhibits indicate that plaintiff made payments under the note in the amount set out therein, but at times in the specified amount and at times in varying amounts up to Five Hundred Dollars. The last payment was made on July 14, 1972 at which time it appears that plaintiff had made total payments substantially in advance of that due by the terms of said agreement (Plaintiff's Exhibit # 1).
 "There was no further payments made subsequent to July 14, 1972 nor was there any demands for payment being made by defendant thereafter until plaintiff, through her attorney, requested the balance due and made offer of payment by cashier's check. Defendants at that time advised that they would not accept the cashier's check and advised that they were terminating the agreement. Plaintiff thereafter, on December 27, 1974, entered these proceedings seeking specific performance on the part of the defendants.
 "This Court is of the opinion that at the time of the execution of the agreement and note that both parties treated said transaction as a mortgage transaction. It is further indicated from the evidence that plaintiff made improvements to said property. The Court is therefore of the opinion that it would be against equity and good conscience to now allow the defendants to void said agreement without affording the plaintiff some means of payment or redemption as provided under the mortgage laws of the State of Alabama.
 "The Court has prepared an amortization schedule giving credit for principal, accumulation of interest and balance due after each payment made by plaintiff and finds that as of May 1, 1977, with accumulated interest at seven per cent, the plaintiff would owe to defendants under the terms of said agreement the sum of Two Thousand Seven Hundred Forty Five and 44/100 Dollars ($2,745.44). The Court is filing a copy of amortization schedule with the clerk for inspection by plaintiff and defendant.
 "It is therefore ORDERED, ADJUDGED and DECREED that plaintiff pay to the clerk of this court the sum of Two Thousand Seven Hundred Forty Five and 44/100 Dollars ($2,745.44) together with the cost of these proceedings and that within ten (10) days thereafter that defendants execute and deliver to plaintiff a deed conveying the real estate set out in Plaintiff's Exhibit # 1. If defendants should fail and refuse to execute said deed within ten (10) days as provided herein then the clerk of this court is Ordered to execute a register's *Page 326 
deed conveying all right, title and interest of defendants to subject lands to plaintiff.
 "Cost of these proceedings are hereby taxed against plaintiff."
On appeal the Eurtons advance several contentions for reversal of the trial court's judgment, however, a disposition of the appeal centers around the rights and obligations of the parties under the lease-sale contract. It is undisputed by the parties, and a reading of the contract reveals, if Mrs. Smith had complied with all of the conditions of the agreement, Eurton was to make and execute a deed conveying title to the described real estate. The contract also contained a forfeiture provision which provides if Mrs. Smith failed to make rental payments when due or failed to perform any of the other stated conditions in the contract:
 "* * * then on the happening of any such event by the party of the second part [Mrs. Smith] forfeits his rights to a conveyance of said property, and all money paid by the party of the second part under this contract shall be taken and held as payment of rent for said property, * * *"
Eurton argues, and the evidence shows, before Mrs. Smith offered to pay the balance due in November 1974, she had not made a rental payment since she became current on 14 July 1973; therefore, under the contract, he had a right to cancel the contract.
This is a tenable argument. However, it does not address the decisive question to be answered: whether Eurton waived his right to take advantage of the forfeiture provision. We conclude that he did.
Generally, forfeiture provisions in lease-sale contracts are not favored in equity. Gatewood v. Hughes, 214 Ala. 674,108 So. 562 (1926). Prior decisions of this court have long recognized that such forfeiture provisions may be waived by the lessor-vendor. Murray v. Webster, 256 Ala. 248, 54 So.2d 505
(1951); Commercial Union Fire Ins. Co. of New York v. Parvin,279 Ala. 645, 189 So.2d 330 (1966).
One of the earlier cases to recite the rule governing waiver by a lessor-vendor is Hawkins v. Coston, 214 Ala. 135, 107 So. 50
(1926), where this court said:
 "* * * The general rule in such matter is that, if the lessor by his acts leads the lessee to believe that strict performance of the agreements in the contract will not be insisted upon, equity will not permit the lessor to take advantage of forfeiture provisions in the contract without notice to the lessee that strict compliance will be required — on the theory that the lessor is estopped from enforcing the forfeiture provisions until he has notified the other party that he intends to do so. It would be inequitable for one party to a contract to lull the other party to sleep by numerous waivers of the provisions of the contract, and then, after the property has been practically paid for, change his position and insist on the forfeiture and retake the property. * * *" (emphasis added) See also Humphrey v. Humphrey, 254 Ala. 395, 48 So.2d 424 (1950), and Mooney v. Weaver, 262 Ala. 392, 79 So.2d 3 (1955).
This rule raises two ancillary issues:
1. Did Eurton by his acts lead Mrs. Smith to believe strict performance of the agreement, payments of rent when due, would not be insisted upon?; and
2. If so, did Eurton notify Mrs. Smith that strict compliance would be required before he exercised his right to forfeit the agreement?
 I Course of Dealing Between the Parties
On this point, the evidence clearly establishes Eurton did not insist on strict performance of the agreement with respect to the monthly payments of rent. In brief, Eurton gives this account of Mrs. Smith's prior payments of rent:
 "By the end of 1971, plaintiff was one payment behind on her rental payments.
 "During the following year, 1972, plaintiff made five payments, and was in arrears *Page 327 
eight payments at the beginning of 1973. From the first of 1973 to the 14th day of July, 1973, plaintiff either paid or was credited with 15 payments, the last payments $427.68, was credit for labor performed by plaintiff's husband. On that date, July 14, 1973, payments were current. * * *"
Under the lease-sale contract, as mentioned earlier, Mrs. Smith's failure to pay the monthly rent when due was in clear violation of the terms and conditions of the agreement; and Eurton had an unequivocal right to forfeit the contract. However, as the evidence indicates, Eurton did not exercise that right nor did he complain; he continued to accept the late payments and even gave credit as payments of rent the value of labor performed by Mrs. Smith's husband. The record also contains testimony that Eurton expressed his consent to the delays in Mrs. Smith's payments of rent. The only reasonable interpretation from Eurton's prior acts with reference to payments of rent is that he did not require strict compliance: prompt payments of rent under the contract; thus lulling Mrs. Smith to sleep.
 II Notice of Forfeiture
The parties agree, and the evidence supports this, there was no communication between the parties from 14 July 1973 to 10 October 1974, when Eurton informed Mr. Smith the contract was cancelled as of that date because Mrs. Smith was 14 months in arrears in payment of rent. Eurton's failure to give notice that prompt payments of rents would be required before he cancelled the contract is clearly contrary to the rule stated in Hawkins v.Coston, supra, and the other cited authorities. Because Eurton's act lulled Mrs. Smith to sleep, he had an equitable duty to awaken her before forfeiting the contract.
Answering the two ancillary issues as we do, that: Eurton's prior acts led Mrs. Smith to believe payments of rent when due would not be insisted upon; Eurton's failure to give notice that strict compliance would be required before he cancelled the contract, plus evidence showing Mrs. Smith had paid a substantial amount under the contract, we hold Eurton waived his right to take advantage of the forfeiture provisions in the lease-sale contract. In this action the trial court was correct in ordering specific performance upon Mrs. Smith's offer to do equity by paying the balance due.
Other grounds for reversal advanced by Eurton include the contention that the trial court erred in its treatment of the instrument sued on, the lease-sale contract, as a mortgage. This court has held when confronted with similar facts and circumstances as in this case:
 "* * * The position of the vendor becomes more analogous to that of a mortgagee; and if the vendor for continued default asserts a right of forfeiture, the vendee may maintain a bill for redemption and specific performance upon offer to do equity by payment of the balance due upon the debt, * * *" (emphasis added) France v. Ramsey, 214 Ala. 327, 107 So. 816 (1926).
The applicability of the mortgage laws of this state is not inconsistent with the finding of waiver by the lessor-vendor.
Eurton further contends the trial court's judgment should be reversed due to the trial court's finding that Mrs. Smith's last payment was 14 July 1972. On that occasion the plaintiff was substantially in advance of her payments due under the terms of the contract. This finding by the trial court is clearly a typographical self-correcting error, as can be readily observed from our earlier references to the evidence which shows the date to be 14 July 1973 and establishing that on the latter date Mrs. Smith was current in her payment. This error is obviously harmless; it has no effect on the substantive rights of the parties. Rule 61, ARCP.
For the reasons stated in this opinion, the judgment of the trial court is affirmed.
AFFIRMED. *Page 328 
TORBERT, C.J., and BLOODWORTH, FAULKNER, ALMON and EMBRY, JJ., concur.