Appeal by plaintiffs from a final decree denying plaintiff's specific performance of a lease-sale contract for the purchase of land. We affirm.
The lease-sale agreement was executed between the Hamners and Rock Mountain Lake, Inc. The Hamners agreed to pay to Rock Mountain Lake $6,032.41 in consideration for lot four of the Griffin Lake Subdivision, Sixth Addition. The payments were to be made as rent, with the appellants paying $50.00 a month at a rate of 6% interest for a period of 10 years, at which time the full amount of the purchase price would have been paid. At that time, Rock Mountain Lake would execute a warranty deed conveying the property to the Hamners if the Hamners met all of the conditions set forth in the body of the lease-sale agreement.
The pertinent provisions are set forth as follows:
 "And should the party of the second part fail to pay the rents as they become due, as aforesaid, or violate any other notice of this Lease, the said party of the first part shall then have the right, at their option, to reenter the premises and annul this Lease. And in order to entitle the party of the first part to re-enter, it shall not be necessary to give notice of the rents being due and unpaid, or to make any demand for the same, the execution of this Lease signed by the said parties of the first and second part, which execution is hereby acknowledged, being sufficient notice of the rents being due and the demand for the same, and shall be so construed any law, usage or custom to the contrary notwithstanding. . . ."
 "It is further understood and agreed that if the party of the second part [plaintiffs] fails to pay the monthly rent as it becomes due; and becomes as much as two months in arrears during the first year of the existence of this lease, or as much as three months in arrears on such payments at any time thereafter, or should fail to pay the taxes on the said property when the same become due, or should fail to comply with any condition *Page 251 
or requirement herein, then on the happening of any such event . . . the party of the second part forfeits his rights to a conveyance of said property, and all money paid by the party of the second part under this contract shall be taken and held as payment of rent for said property, and the party of the second part shall be liable to the party of the first part [defendant, Rock Mountain Lake, Inc.] as a tenant for the full term of said lease, and the provisions herein `that the rent paid under this lease shall be considered a payment for said property, and the party of the first part shall make and execute a deed with a warranty of title conveying said property to the party of the second part,' shall be [a] nullity and of no force or effect; and failure of the party of the second part to comply with any of the conditions of this instrument shall ipso factor render the said provision a nullity, and make the said party of the second part a lessee under this instrument, without any rights whatever except the rights of lessee without any notice or action whatever upon the part of the party of the first part."
The Hamners went into possession of the property, using it as an extension of the lot on which their residence was located (lot three), until November 8, 1982, at which time Rock Mountain Lake conveyed the property to appellees Neal and Betty Hemphill, for $20,000.00. During the period of their possession, the Hamners fell in arrears on several occasions. The record discloses that from the time the appellants took possession of the lot until March 24, 1979, they were late in making payments six times. At one point, the Hamners were in arrears as much as seven months. Following the payment on March 24, 1979, the Hamners made no further payments until they tendered the balance of $5,953.00 into court on November 10, 1982, two days after the property was deeded to Neal and Betty Hemphill, co-defendants.
The total amount of consideration paid by the appellants prior to the sale to the Hemphills was approximately $2,800.00. This amount was paid over a period of nine years. Of that amount, $79.00 represents the principal with the remainder representing the interest.
Following the sale of lot four to the Hemphills, plaintiffs initiated this suit for specific performance of the lease-sale agreement. The defendants filed motions to dismiss the complaint on the grounds that the plaintiffs failed to adhere to the conditions of the agreement and that they failed to state a claim upon which relief could be granted. The complaint was later amended to allege that the Hamners had met the conditions of the contract, that the defendants tendered no notice that strict compliance with the contract was required, and that the plaintiffs were the true and lawful owners of the property.
All defendants filed motions for bond and renewed motions to dismiss, which were denied. The defendants then filed their answers to the complaint, with Neal and Betty Hemphill adding a counterclaim against the Hamners for harassment and willful and wanton conduct.
The case was tried without a jury. At the conclusion of the plaintiffs' evidence, the trial judge granted a judgment for defendants. This appeal ensued.
Plaintiffs contend that the trial court erred in granting judgment for the defendants. This argument is that defendant Rock Mountain Lake "lulled" them into the belief that late payments were satisfactory by accepting them, and that, furthermore, no notice of a contrary position was ever given to them, resulting in a waiver of the contract's forfeiture provisions. To allow Rock Mountain Lake to enforce the contract against them under such circumstances, it is argued, would amount to enforcing a forfeiture "without notice to the lessee that strict compliance [would] be required," citing Murray v.Webster, 256 Ala. 248, 54 So.2d 505 (1951), and Eurton v.Smith, 357 So.2d 324 (Ala. 1978).
Of course, whether there was a waiver of strict compliance is a question of fact, the burden of proof resting upon the party relying upon waiver. Davis v. Folmar, 203 Ala. 336, 83 So. 60
(1919). And it is also well established that the mere acceptance *Page 252 
of payments in default under a lease-sale contract does not waive future defaults of the same nature. Rogers v. Newton,340 So.2d 768 (Ala. 1976). To adopt such a rule "would penalize the goodhearted vendor for allowing a defaulting vendee to make up his previous defaults." Ibid. at 769.
The record discloses that the plaintiffs did miss a number of payments from the inception of the lease on September 3, 1974, to March 24, 1979. However, as of March 24, 1979, the plaintiffs were current on their payments. Notwithstanding their current status, after March 24, 1979, plaintiffs did not offer to make any payments as the contract required, that is, none for the three and one-half years after March 24, 1979. Only at the time of the filing of this suit did plaintiffs tender $5,953.00 to the circuit court as payment under the contract. In fact, it was only after a "For Sale" sign had been posted on lot three that the plaintiffs showed any interest in performing the remaining obligation under their agreement.
In that connection, it appears that after Mr. Hamner noticed the "For Sale" sign on lot four, he contacted a representative of Rock Mountain Lake, Mr. Coleman, to inquire about it, and was referred to Elbert Buckelew, another Rock Mountain Lake representative. According to Hamner, Buckelew contacted Hamner about two weeks later and "the best I remember he said they would settle on $11,000." Hamner replied that he would get back in touch with Buckelew sometime later. But when contact was made about two weeks later, Hamner said, Buckelew told him, "[H]e thought I was too late, that he thought Mr. Coleman had a contract to sell the lot to someone else [the Hemphills]."
This evidence is to be considered, of course, with other evidence showing that the portion of the contract dealing with the necessity for notice was understood by plaintiffs, who failed to act with knowledge of the consequences.
The cases cited by plaintiffs in support of their position are distinguishable from the instant case. In Eurton v. Smith,supra, this Court agreed with the trial court that the vendor-lessor, under the facts of that case, had waived strict performance and had accepted substantial performance in the form of payments of money, so that it would have been inequitable to allow forfeiture. In Hawkins v. Coston, 214 Ala. 135,107 So. 50 (1926), the vendee-lessee had made 52 of the required 55 payments on his lease-sale, although certain annual sums for taxes and insurance had not been paid by the vendee-lessee. In reversing the trial court's order dismissing the complaint for specific performance, this Court observed, at214 Ala. 139, 107 So. at 53:
 "It would be inequitable for one party to a contract to lull the other party to sleep by numerous waivers of the provisions of the contract, and then, after the property had been practically paid for, change his position and insist on the forfeiture and retake the property."
As we have shown, the circumstances here differ from the facts of either of those cases.
The authorities establish that forfeiture provisions in lease-sale agreements are not favored, but they will be upheld, nevertheless, when the lessee-vendee has actual or constructive notice that strict compliance is necessary. In making these decisions, courts determine whether the vendee had notice of the requirement of strict compliance and whether vendee had substantially performed his part of the agreement. E.g., Eurtonv. Smith, supra. Waiver of strict compliance is a question of fact. Murray v. Webster, supra.
Under the evidence in this case the trial court, sitting without a jury, could have found that no waiver of strict compliance of the agreement was made by defendant Rock Mountain Lake.[1] Those findings are not to be disturbed unless clearly erroneous, Moore v. Lovelace, *Page 253 413 So.2d 1100 (Ala. 1982), which is not the case here. It follows that the decree of the trial court granting the motion of Rock Mountain Lake, Inc., for a directed verdict and granting judgment for the defendants on plaintiffs' complaint must be, and it is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.
[1] Thus, we need not discuss the issue of plaintiffs' delay (laches), which was also found by the trial court to bar relief for the plaintiffs. Pan American Fire Casualty Co. v.DeKalb-Cherokee Counties Gas Dist., 289 Ala. 206, 266 So.2d 763
(1972).