54 So.2d 505

**MURRAY v. WEBSTER et al.**

6 Div. 190.

Supreme Court of Alabama.

Oct. 11, 1951.

Ling & Bains, Bessemer, for appellant.

McEniry, McEniry & McEniry, Bessemer, for appellees.

SIMPSON, Justice.

Under date of April 1, 1946, T. O. Murray, appellant here, respondent below, entered into a lease sale contract with Lilly B. Webster and Annie Bell Simon, appellees here, complainants below, leasing to them a house and lot in the City of Bessemer for a term of eighty-eight months for a recited consideration of $1,200, payable $100 in cash and the balance in monthly installments of $12.50 each, and in addition thereto the payment of taxes. The lease agreement contained a condition subsequent that if at the end of the term the lessees had paid all of the installments of rent and taxes, and had complied with all the conditions of the contract, then the transaction should be treated as a sale, that is to say, the lessor would treat the rent paid under the lease as a payment for the property and would execute a deed thereto to the lessees. The instrument provided for a forfeiture of the lease upon failure of lessees to pay rents as they became due, the right of the lessor to reenter the premises and terminate the lease being reserved without the necessity of giving notice to or making demand upon lessees for payment of rents due. It was further provided that if the lessees became in arrears for as much as two months during the first year, or as much as three months at any time thereafter, or should fail to pay the taxes or to comply with any other condition of the contract, then the agreement of lessor to treat the rents paid as payment for the property should become a nullity, and that failure of lessees to comply with any of the conditions of the instrument should "ipso facto render the said provision a nullity, and make said party of the second part a lessee under this instrument, without any rights whatever except the rights of lessee without any notice or action whatever upon the part of the party of the first part."

Policies of fire insurance were issued from year to year by the respondent American Union Insurance Company upon the improvements upon the lot of land. Such a policy was issued April 24, 1949, for a term of three years and was in force when, on October 4, 1950, the dwelling house on the property was partially destroyed by fire. The face amount of the policy was $1,000, and the insurer agreed to a loss in the sum of $850. On the following day the lessor notified the lessees that he was cancelling the contract by reason of their default in payments. Lessees offered to pay up all sums in arrears or to pay the entire amount of the consideration expressed in the contract and, in the latter event, have a deed to the property. These offers were refused by the lessor who, on November 20, 1950, instituted against the lessees a suit of unlawful detainer.

Thereupon the lessees filed this bill in equity against the lessor and the insurance company, setting up the facts hereinabove set out. It is alleged that at the time of filing the bill complainants had paid, in addition to $100 in cash upon taking possession of the premises, forty-five of the monthly installments, the last payment being made on June 7, 1950, of that installment which was due January 1, 1950, and that "said respondent by his acts during the entire contract has led the complainants to believe that strict performance of the agreement in the contract would not be insisted upon." It is further alleged that the policy of insurance provided that the property in question was sold to complainants under a lease sale contract; that each year prior thereto a like policy, with like provision, had been issued, and that, while the lease sale contract made no pro-

vision for insurance, the respondent Murray charged complainants with the premiums for such insurance; that complainants have paid each year's premium as the same became due or, if they have not paid this premium, they stand ready and willing to do so, and if not paid it was because no demand was made upon them; and that before receiving a deed respondent would require them to pay such premiums, and that such premiums were charged to complainants on the books of respondent's insurance agent.

The bill prays for an order restraining prosecution of the unlawful detainer suit; for ascertainment of the amount complainants were in arrears under the contract and permission to pay such arrearages and continue under the contract or, in the alternative, for ascertainment of the entire amount due under the contract and that complainants be allowed to pay such entire amount and that respondent be required to make and execute to them a deed to the property. It is further prayed that the American Union Insurance Company be required to pay into the registry of the court the amount ascertained to be the loss to the property by fire, and that complainants have the benefit of the insurance money, either by way of its application in restoration of the property, or by way of credit on the balance due under the contract.

The respondent insurance company filed an answer and cross bill impleading both the lessor and the lessees as conflicting claimants under the policy. Without objection, the insurer was permitted to pay the agreed amount of the loss into court and be discharged.

After submission on the pleading and the proof offered, a decree favorable to the complainants was rendered. The decree ascertained the balance due on the consideration expressed in the contract, the amount of taxes paid by the respondent-lessor, and the amount of the insurance premiums paid by him. It was directed that the aggregate of these amounts be paid to the respondent out of the insurance money, and that respondent thereupon execute a deed to the complainants. It was further decreed that the costs of the suit be paid out of the insurance money on deposit, the balance, if any, to be paid to complainants. Implicit in the decree was the conclusion that any forfeiture of the contractural provisions of which respondent-lessor might have availed had been waived by him, and that the insurance was in fact for the benefit of the complainants-lessees. In these phases the decree is assigned as error.

In the case of Spangler v. Barber, 245 Ala. 386, 17 So.2d 232, we had before us a lease sale contract apparently identical with the contract here involved. There the *lessor* sought, among other things, to enforce specific performance of the contract on the part of the lessees to purchase the property. Reversing the decree appealed from, we there held that the contract contemplated that it should continue a lease until the end of the term and then, if the tenant had paid all installments of rent, he had the right to treat it as a contract of purchase; but that his default *ipso facto* voided that condition without affirmative action on the part of the vendor. The property involved in that case was vacant lots. The lessee—or his assignee—defaulted in the stipulated installments some twelve years before the bill was filed, and the entire indebtedness, evidenced by unpaid notes, matured more than ten years before the bill was filed. In the case then before us the real question was whether or not the contract, by its terms, imposed upon defendant a binding obligation to purchase and pay for the property. We held that it did not, but that his right to purchase lapsed upon his failure to comply with the conditions upon which it was granted, and that his only obligation remaining was to pay rent. That case dealt with the rights of the lessor-vendor, not with those of the lessee-vendee. There was, of course, no question of a waiver of the provision of the contract for an "ipso facto" forfeiture of the right to purchase. Here the question of a waiver is the primary issue. That such a forfeiture may be waived by the lessor-vendor there can be no doubt. Whether there was a waiver is a question of fact, with the burden of proof resting upon the party asserting or relying upon a

waiver. Davis v. Folmar, 203 Ala. 336, 83 So. 60.

■ Admittedly, the complainants were in default in payment of installments of rent, having been persistently in arrears over a considerable period. They were likewise in default in payment of taxes, the lessor having generally paid the taxes himself. Very clearly, it appears, the lessor generally paid insurance premiums. On the other hand, the evidence tends very strongly to show that, up to the time when the fire occurred and the appellant declared a forfeiture and cancellation of the contract, he treated the appellees with marked leniency. By his own testimony, detailing his transactions with appellees in and about the collection of installment payments, appellant manifested a desire and purpose to have the appellees carry out the purchase agreement, notwithstanding arrearages. He testified to an occasion on which he urged one of the appellees to catch up with the payments in order that they might not lose the property. He testified that he had paid taxes but had charged them to appellees with a view to collecting them back at the conclusion of the contract when he should make deed to them. He accepted installment payments on the lease when they were long past due. The facts and circumstances shown were well calculated to lull appellees into a belief that strict performance of the agreement was not required; and where this is so equity will not permit the lessor to take advantage of forfeiture provisions without notice to the lessee that strict compliance will be required. Shaddix v. Bilbro, 220 Ala. 657, 127 So. 227.

Under the circumstances shown, no such notice having been given by the lessor-vendor to the lessees-vendees of his purpose to exact strict compliance with the terms of the contract—his conduct importing the contrary—we conclude that the trial court committed no error in adjudging appellees' right to complete the contract by paying all that was found to be due, and to have a deed to the premises.

■ We also sustain the ruling below on the question of the insurance. It is well settled in this jurisdiction that "insurance taken by one with an insurable interest in the property, who pays the premiums * * out of his own funds, is a personal indemnity to the insured." Northern Assurance Co. v. Stewart, 228 Ala. 201, 153 So. 243, 245; Montgomery v. Hart, 225 Ala. 471, 144 So. 101; Bell v. Barefield, 219 Ala. 319, 122 So. 318; Westchester Fire Ins. Co. v. Green, 223 Ala. 121, 134 So. 881. A clearer statement of this doctrine, however, is thus expressed in the Bell v. Barefield case, supra: "The general rule, sustained by the great weight of authority, is, *in the absence of anything in the instrument creating the estate, or of agreement to that effect, between the parties,* no duty rests upon the one or the other to insure for the benefit of a remainderman or his cotenant, and insurance taken by one with an insurable interest in the property, who pays the premiums thereon out of his own funds, is a personal indemnity to the insured. * * *" (Italics supplied). 219 Ala. 321, 122 So. 319.

Thus, we have declined to follow a contrary view, given effect elsewhere, that one with an interest less than the whole who insures the property for its full value is to be treated as a trustee for the benefit of the owners of the remainder interest. But it is equally clear, from our adjudicated cases, that, in such a case, whether the other joint owners have an interest, in law or equity, in the insurance money, may properly turn upon the equities of the particular case. Miles v. Miles, 211 Ala. 26, 99 So. 187. Whether the insurance was taken for the sole benefit of him who procured it; whether he did in fact pay the premiums out of his own funds; whether by express or implied agreement he took out the insurance for the benefit of the owners of the other interests in the property, such others to contribute to its cost: these questions are to be determined from the evidence in the case and the circumstances of the parties out of which arise "the equities of the particular case."

■ The insurance policy in force at the time of the loss, as well as all policies previously issued on the property during the existence of the contract between appellant

and appellees, contained this recital: "It is hereby understood and agreed that Lillie B. Webster and Annie Bell Simon hold Lease Sale Contract to the above described real property." Such a stipulation or recital in the policy itself would seem to be inconsistent with the idea that the insurance on the full insurable value of the property was for the sole benefit of appellant, in whose name the insurance policy was issued. The evidence shows that a notice or statement was sent to appellees, by the agency through which the insurance was taken, each time the insurance was renewed or reissued. It shows that at least one full annual premium was paid by appellees, thus indicating a willingness on their part to pay others if called upon to do so. Certainly, these facts, in the light of the general course of dealing on the part of appellant—informal, as we have shown— were calculated to impress the appellees that they were protected by insurance which they were paying for or were expected to pay for. Nothing to the contrary, nothing that would have tended to inform them that they were not protected, appears. On the whole, therefore, we are unwilling to put the trial court in error in finding that there was an implied contract or agreement between the parties that the insurance was for their joint protection and that the appellees would be charged with the premiums.

In view of the fact that appellees were charged on the accounting with the full amount of the balance due under the contract, with interest, with all taxes paid by appellant, with all insurance premiums paid by him and, additionally, with all costs of the case in the court below, we are persuaded that appellant has received all he was entitled to receive under his contract, and has no cause to complain. Appellees have obtained merely indemnity for their loss, being charged with the cost of such indemnity. They have still the onus of restoring the property.

The decree is affirmed.

Affirmed.

LIVINGSTON, C. J., and FOSTER, LAWSON and GOODWYN, JJ., concur.