JONES, Justice.
This is a contest over the distribution of the proceeds of a property damage insurance policy between the lessor and lessee of a warehouse.
In July of 1976, Appellee John Childers, through the efforts of his real estate agent, leased an empty warehouse to Appellant Resta Corporation. With regard to insurance coverage for the premises, the lease provided:
“5. [Lessee] will be responsible for any injury to any person or persons in or about the demised premises, and it agrees to indemnify Lessor against all claims and judgments for loss, damage or injury to property or persons resulting by reason of Lessee’s use and occupanc[y] of the demised premises. Lessee shall obtain liability insurance in the amount of One Hundred Fifty Thousand and No/100 ($150,000.00) Dollars and property damage insurance in the amount of Fifty Thousand and No/100 ($50,000.00) Dollars naming Lessor as co-insured, and submit to Lessor a duplicate insurance policy or certificates certifying same.

“22. It is understood and agreed that lessee shall obtain fire and extended insurance on the premises and the name of the Lessor shall appear as party in interest. Insurance coverage shall be in the amount of Fifty Thousand and No/100 ($50,000.00) Dollars for the building. Lessee shall furnish a copy of said policy to the Lessor.
Lessee’s insurance agent was provided a copy of the lease and was requested to prepare an insurance policy to comply with the terms of the lease. Lessor received a letter from Lessee’s insurance agent, which stated in part:
“We have bound effective 8/11/76 a new multi-peril package policy through the Home Insurance Company covering 601 Holmes Avenue N. W. for Robert Res-ta/Resta Corporation d/b/a Resta & Associates. The amount of this coverage is $50,000.00 on the building and $300,000.00 personal liability . . .
“Your interest as lessor is covered in the policy for insurance on the building. As soon as the policy is received we will send you a copy of it... ”
Copies of this letter were sent to both Lessee and Lessor’s real estate agent. The “multi-peril package” referred to in the insurance agent’s letter consisted of coverage for “Business Personal Property” and “Building(s).” “Provisions applicable to Sections I, II and III” were attached to the first page of the policy as was an “Additional Perils Endorsement” applicable to Coverage A and B (A and B being the general terms, “Business Personal Property” and “Building(s)”). The pertinent portion of that endorsement states:
“PERILS INSURED AGAINST
“11. Weight of Ice, Snow or Sleet which results in physical injury to the building^) covered or containing the property covered, but excluding loss, except as the direct result of the collapse of a building^) to awnings, gutters, downspouts, outdoor radio and televisions antennas and aerials, including their lead-in wiring, masts and towers, outdoor signs, fences, swimming pools, walks, roadways or other paved surfaces, curbs, piers, bulkheads, wharves or docks, beach or diving platforms or appurtenances, retaining walls not constituting a part of the building(s), or outdoor equipment whether such property is specifically described in the Declarations or not.”
During the 2V2 years following the execution of the lease for the warehouse, Lessee made several changes and installations to better equip the building for its printing business.
On January 1, 1979, the roof of the warehouse collapsed under a weight of ice and snow, damaging both the building and Les *906 see’s personal business property. Lessee received $250,000.00 under the “Business Personal Property” provisions of the insurance policy, but estimates its total loss to be between $540,000.00 and $550,000.00. The insurance Company also issued a check in the amount of $45,439.93 payable jointly to Lessor and Lessee for “property damage” under the “Building(s)” terms of the insurance policy (the $50,000.00 coverage less expenditures for debris removal).
Lessor claims the proceeds of the $45,-439.93 check on the basis of paragraphs 5 and 22 (quoted above) of the lease and the provisions of the insurance policy which indicate Lessor as the insured party in interest.
Lessee maintains, however, that the “additional perils endorsement,” the only portion of the policy providing coverage for damage due to snow and ice accumulation, was purchased by Lessee on its own initiative and for its own protection and was not required ny the “extended insurance” terms of the lease.
No agreement could be reached as to the disbursement of the funds. The check, therefore, was endorsed by both parties and deposited with the Circuit Court of Madison County and a declaratory judgment action was instituted by Lessor.
After a hearing ore tenus, the trial court, finding that Lessor is entitled to the insurance proceeds, stated in part:
“The lease requires both property damage insurance (paragraph five) and fire and extended insurance (paragraph twenty-two). It is the opinion of the court that these two phrases, when read in conjunction with each other, require insurance protection from property damage caused by the weight of ice and snow.
“The actions of the parties, and particularly of [Lessee], subsequent to the lease agreement are in accord with this interpretation. The lease required [Lessee] to send to [Lessor] a copy of the policy purchased for [Lessor’s] protection. The copy sent to [Lessor] provides coverage for the snow and ice damage suffered. The amount of coverage for building damage caused by snow and ice is $50,-000.00. This amount coincides with the amount required by the lease. [Lessee’s] intention to comply with the lease by providing protection against snow and ice damage is further evidenced by the letter of its [insurance] agent. . ., sent to [Lessor] with the insurance policy. [The agent] assures [Lessor] that his ‘interest as lessor is covered by the policy of insurance on the building.’ He further described the policy as being a ‘multi-peril package.’ Nowhere does he inform [Lessor] as he could have if that had been [Lessee’s] interpretation, that not all of the perils insured against and set out in the policy were insured for [Lessor’s] benefit.
This appeal followed.
Citing Murray v. Webster, 256 Ala. 248, 54 So.2d 505 (1951), and Bell v. Barefield, 219 Ala. 319, 122 So. 318 (1929), Lessee summarizes its primary contention:
“The general rule ... is, in the absence of anything in the instrument creating the estate, or of agreement to that effect, between the parties, no duty rests upon the one or the other to insure for the benefit of a remainderman . . ., and insurance taken by one with an insurable interest in the property who pays the premiums thereon out of his own funds, is a personal indemnity to the insured .. . . ” [Emphasis in brief.]
Lessor answers:
“In this appeal, [Lessee] relies solely upon what it alleges to be the rule in Alabama that ‘in the absence of and agreement to insure between the lessor and lessee, the proceeds of an insurance policy taken out by one of them or his privy cannot be claimed, in whole or in part, by the other, even though the policy covers the value of the interest of both in the property.’ (emphasis supplied). If the rule as stated by [Lessee] is the law of Alabama, the hypothesis that begins the rule would render the rule inapplicable to this case. As stated by [Lessee], the rule applies ‘in the absence of an *907 agreement to insure between the lessor and lessee. Judge Snodgrass found, quite specifically, that there was an agreement between Childers, the lessor, and Resta Corporation, the lessee, to provide the insurance coverage in question, that is, the weight of snow and ice. For this Court to apply that which [Lessee] contends to be the rule, this Court would have to find that Judge Snodgrass was incorrect in his determination of the existence of an agreement between the parties.” [Emphasis in brief.]
We agree with Lessor and affirm.
Our holding in the instant case in no way weakens or modifies Murray and Bell. We reaffirm the holding of each of these cases. In both Murray and Bell, there was no agreement between the parties that the occupant of the property would insure the interest of another. Here, the trial court, amply supported by the evidence found a specific agreement binding Lessee to provide the disputed coverage. Thus, the premise of Lessee’s reliance on Murray and Bell is missing.
Indeed, when the two pertinent “insurance” provisions of the lease are construed together, coupled with the conduct of the parties giving effect to these provisions, a finding contrary to that made by the trial judge would, at the very least, be against the great weight and preponderance of the evidence. See Charles H. McCauley Associates v. Snook, 339 So.2d 1011 (Ala.1976) and Marcrum v. Embry, 291 Ala. 400, 282 So.2d 49 (1973).
That Lessor had an insurable interest in his own building is beyond debate. That Lessee provided $50,000.00 of property damage (“Building(s)”) insurance is an objective fact, as is the roof-collapse damage to the building. Moreover, the proceeds paid by the insurance company accorded with the conduct of the parties with respect to the lease agreement and the terms of the insurance contract. While the difference in the terminology between “extended insurance coverage” and “additional perils endorsement” may have significance within the insurance industry, such difference, if any, is not determinative of the legal issue of coverages between Lessor and Lessee in view of Lessee’s contractual obligation under the lease to provide Lessor with building-risk insurance.
While we would hesitate to classify Lessor’s reliance on the ore tenus rule as misplaced, any inference of fact contrary to the trial court’s findings would surely be a strained one. To be sure, an argument could be made that the trial judge was compelled by the evidence to draw but a single inference: that the “insurance” provisions of the lease are clear and unambiguous, requiring Lessee to insure against the very risk here in controversy; but this we need not decide.
Finding evidentiary support for the trial judge’s findings of fact, and finding no error in his application of the law to those facts, we affirm the judgment.
AFFIRMED.
TORBERT, C. J., and MADDOX, SHORES and BEATTY JJ., concur.