Mr. and Mrs. William Brent Akin filed this declaratory judgment action against Kay Moore, seeking to quiet title to a certain tract of improved real property located in Colbert County, Alabama ("the Colbert property"). Kay Moore filed a counter-claim, seeking specific performance of a lease-sale contract, damages, and attorney fees. Mrs. Moore also obtained leave of court to bring in Steven Moore as a third-party defendant, seeking to enforce an agreement between them which required Mr. Moore to pay Mrs. Moore $10,000 within six months of the loss of or default on the Colbert property. The court found fee simple title to the house and land to be in the Akins, denied Mrs. Moore's counter-claim, and rendered judgment in favor of Mr. Moore on the third-party claim. Mrs. Moore's motion for new trial was denied.
The primary issue is whether the trial court's judgment declaring fee simple title to be in the Akins is so unsupported by the evidence as to be plainly and palpably erroneous and manifestly unjust.
A secondary issue is whether the trial court erred in rendering judgment in favor of Steven Moore on the third-party claim, presumably on the basis that the above-mentioned agreement between him and Kay Moore was merged into the judgment granting them a divorce.
In September 1981 the Akins listed their house in Tuscumbia, Alabama, with a real estate agent. On December 14, 1981, they received a written offer on the house from Steven Moore and Kay Moore, husband and wife. The Moores were unable to obtain approval from the Akins' mortgagee to assume the mortgage, so it was agreed that they would buy the house under a lease-sale contract, with the provision that the Moores would once again seek approval at the end of an eighteen-month lease period. The contract, signed on December 22, 1981, required the following payments over the first eighteen months: $2,000 to be paid at closing; two equity installments of $3,667.31 plus interest, the first to be paid within six months and the second within twelve months of the date of execution; and eighteen monthly installments of $332.25 plus interest, for a total of $360 per month. The Moores agreed to assume the mortgage and the Akins agreed to execute a warranty deed to the property and deliver it to the Moores after these payments were made:
 "At the time Purchaser makes the final eighteenth (18th) monthly installment (or at any time after all payments called for in Paragraphs 2 and 3 hereof have been made), Seller agrees to make a deed to Purchaser, and Purchaser agrees to assume and pay the balance then due to Valley Savings and Loan Association on the mortgage on the property hereinabove described executed to said Association by Seller."
On May 25, 1983, Kay Moore and Steven Moore entered into a contract whereby Kay agreed to transfer by quitclaim deed her interest in another parcel of property in exchange for a quitclaim deed from Steven relinquishing his interest in the Colbert property and his promise to pay $10,000 to Kay in the event of default or loss by other *Page 928 
means of the Colbert property. The Moores on April 6, 1984, entered into an agreement in contemplation of divorce and were divorced that month.
The Moores made all the payments required during the first eighteen months. As agreed, at or near the end of this period, the Moores again applied with the mortgagee to assume the mortgage. A deed was executed prior to this time and deposited with the Akins' attorney, to be delivered to the Moores when they assumed the mortgage. In July 1983 the mortgagee again refused to allow the Moores to assume the mortgage. The Moores remained on the premises and continued to make payments to the Akins, who in turn paid on the mortgage. Mr. Akin testified that at this point he requested something in writing from the Moores indicating how they planned to comply with the contract and assume the mortgage. The Moores listed the house with a real estate agent in an attempt to find a buyer for the house. Mr. Akin informed them that they were in default on the contract but that he would agree to allow them some time to locate a buyer for the property.
Beginning in December 1983, the Colbert property was rented to the McNairys, who paid rent to the Moores and allegedly agreed to purchase the property. In June of 1984 Steven Moore's check for the June payment was dishonored by the bank; the June payment was made on July 9, 1984. On August 7, 1984, the July 1984 payment was received by the Akins. One hundred dollars toward the August payment was paid by Kay Moore in the latter part of September. Mr. Akin then asked the McNairys to make payments directly to him. He also asked Kay Moore for a writing stating how she planned to repay the $260 still owed on the August payment and specifying the terms of the purchase agreement that had been made with the McNairys. No such writing was forthcoming.
In January of 1985 it became apparent to Mr. Akin that the McNairys had no intention of purchasing the property and planned to move out the following June. Again, he requested a writing from Mrs. Moore stating how she planned to repay the past due $260 and any plans she had concerning procuring a buyer for the house. In March 1985 Mrs. Moore met with Mr. Akin and informed him that she had no resources from which to continue making the payments once the McNairys moved out. She requested that Akin return the earnest money and allow her to "go her way." At the end of this meeting Mr. Akin told Mrs. Moore that "it [is] clear we [see] our obligations differently and I [am] going to have to take action to protect my interest" in the property.
On May 8, 1985, Mr. Akin sent written notices of default by registered mail to Steven Moore and Kay Moore pursuant to paragraph 10 of the December 1981 contract, which gave the Akins the right to cancel the contract if the Moores violated any condition thereof. Under the terms of the contract, the Moores' rights under the contract, including the right to possession of the property, terminated ten days after they received the notice of cancellation. On June 7, 1985, Mr. Akin received a check in the amount of $260 from Mrs. Moore's aunt for the past due payment. This check was returned with a letter explaining that it did not satisfy the full past due obligation of the $260 and the assumption of the mortgage as per the contract. The letter also indicated Mr. Akin's intention to sell the house and to turn over to Mrs. Moore any amount received in excess of the past due amount and expenses.
The McNairys moved out of the house in June 1985 and it remained vacant through July and August. In August Mr. Akin received an offer on the house. He then contacted Mrs. Moore to give her a final opportunity to locate someone to assume the mortgage. After receiving no response, Mr. Akin accepted the offer and signed a contract for the sale of the property. When the Akins had the title abstract updated, it was discovered that Mr. Moore had executed a quitclaim of his interest to Mrs. Moore and that the Moores had apparently caused unsatisfied state and federal tax liens to attach to the property. As a result, the title company refused to insure the title to the Colbert property. The *Page 929 
Akins then filed this action, seeking a declaratory judgment quieting title in them.
Kay Moore contends that the trial court erred in granting judgment for the Akins and for Steven Moore. She argues that she was made to believe that the late and partial payments and the arrangement, "established through a course of dealing," whereby she made payments to Mr. Akin, who in turn paid the mortgage, were acceptable to the Akins, and further, that no notice of a contrary position was given to her or her husband, and that these actions by the Akins constituted a waiver of the contract's cancellation provisions.
Whether there was a waiver of strict compliance is a question of fact, the burden of proof resting upon the party relying on waiver. Hamner v. Rock Mountain Lake, Inc.,451 So.2d 249 (Ala. 1984); Davis v. Folmar, 203 Ala. 336, 83 So. 60
(1919). It is also well established that the mere acceptance of payments in default under a lease-sale contract does not waivefuture defaults of the same nature. Rogers v. Newton,340 So.2d 768 (Ala. 1976). To adopt such a rule "would penalize the goodhearted vendor for allowing a defaulting vendee to make up his previous defaults." 340 So.2d at 769.
The trial court heard testimony from which it could have reasonably concluded that the Moores knew that they were agreeing to assume the mortgage and that they were to do so with the knowledge and consent of the mortgagee. The express purpose of drafting their agreement as a lease-sale contract was to give the Moores additional time to obtain consent from the mortgagee. The fact that the Moores were allowed to continue occupying the Colbert property after the expiration of eighteen months, so that they could explore means available to recoup their investment in the property, did not constitute a waiver by the Akins. The nature of the contract itself indicates the mutual understanding of the parties that the mortgage was to be assumed with the consent of the mortgagee.
The authorities establish that forfeiture provisions in lease-sale agreements are not favored, but that they will be upheld when the lessee-vendee has actual or constructive notice that strict compliance is necessary. In making these decisions, courts determine whether the vendee had notice of the requirement of strict compliance and whether the vendee had substantially performed his part of the agreement.Eurton v. Smith, 357 So.2d 324 (Ala. 1978). Waiver of strict compliance is a question of fact. Hamner v. Rock Mountain Lake,Inc., 451 So.2d 249 (Ala. 1984); Murray v. Webster, 256 Ala. 248, 54 So.2d 505 (1951); Davis v. Folmar, 203 Ala. 336,83 So. 60 (1919).
There was evidence from which the trial court could have concluded that Mr. Akin contacted the Moores frequently concerning the late payments and their plans for either assuming the mortgage or finding a purchaser for the house. Akin's swift action to obtain payments from the McNairys after one partial payment indicates his intention to enforce strict compliance with the contract. Only when it appeared that there was no prospect of completing performance on the contract did Mr. Akin exercise his right to cancel the contract.
Under the evidence in this case the trial court, sitting without a jury, could have found that no waiver of strict compliance of the agreement was made by the Akins. We assume that the court made such a finding. It is the policy of this court to presume correct the findings of the trial court based upon competent evidence, when the evidence is presentedore tenus. Such findings will not be disturbed upon appeal if supported by the evidence or any reasonable inference therefrom, unless they are plainly and palpably erroneous and manifestly unjust. Dennis v. Dobbs, 474 So.2d 77 (Ala. 1985);First Alabama Bank of Montgomery v. Coker, 408 So.2d 510 (Ala. 1982); Knapp v. Knapp, 392 So.2d 527 (Ala. 1980). Thus, the trial court did not err in declaring that fee simple title to the property is in the Akins.
Kay Moore next contends that the trial court erred in refusing to enforce her contract *Page 930 
with Steven Moore after finding that she had forfeited her interest in the Colbert property. Mr. Moore defended on the grounds that the disputed contract was merged into the divorce judgment, by virtue of the separation agreement entered into in April 1984, and thereby rendered null and void.
"The question whether a separation agreement or a property settlement is merged in the decree or survives as an independent agreement depends upon the intention of the parties and the court. . . ." East v. East, 395 So.2d 78
(Ala.Civ.App. 1980), cert. denied, 395 So.2d 82 (Ala. 1981). If there is an agreement between the parties and it is not merged or superseded by the judgment of the court, it remains a contract between the parties and may be enforced as any other contract. However, any part of the agreement that is merged into the judgment is subject to the equity power of the court and is no longer of a contractual nature. Oliver v. Oliver,431 So.2d 1271, 1275 (Ala.Civ.App. 1983); East v. East, supra.
Kay Moore produced the contract of May 25, 1983, and entered it into evidence. The terms of the contract, together with Kay Moore's evidence regarding it, proved a prima facie case that she was entitled to recover. The burden was thereafter upon Steven Moore to prove the alleged merger by clear and convincing evidence. He failed to meet his burden, because no divorce judgment appears in the record in this case. The only evidence tending to show merger or in any way tending to defeat the third-party claim[1] was the agreement executed in contemplation of divorce. It is at best ambiguous as to whether the May 1983 contract was intended to be merged into it, and, in any event, the failure to prove that the divorce court incorporated this agreement into its judgment renders it of no probative effect. The evidence was therefore insufficient to support a decision in favor of Steven Moore.
In light of the foregoing, that part of the judgment that held fee simple title to be in the Akins is affirmed. However, that part of the judgment in favor of Steven Moore is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
TORBERT, C.J., and MADDOX, BEATTY and HOUSTON, JJ., concur.
[1] We note that Steven Moore has not filed an appellee's brief. Therefore, the answer to the third-party complaint is the primary indication of Steven Moore's position. He testified regarding the separation agreement, but again, in the absence of proof that the agreement was incorporated into the divorce judgment, it cannot serve to defeat the claim. The trial court did not make any findings in rendering judgment for Steven Moore.