B.K.W. Enterprises, Inc., filed an action against Tractor 
Equipment Company, Inc. ("T E"), alleging breach of contract, fraud, intentional interference with a contractual relationship, and the tort of bad faith. The action was based on a dispute arising out of a lease purchase agreement covering heavy equipment B.K.W. leased from T E to use in its coal mining operations. At the expiration of the lease, B.K.W. attempted to exercise its purchase option, but T E responded by saying that B.K.W. could not purchase the equipment because it was in default under the lease. B.K.W. claims that breaches and misrepresentations by T E prevented B.K.W. from exercising its right to purchase the equipment.
After two years of discovery and immediately prior to trial, T E challenged the breach of contract claim with a Rule 12(c), Ala.R.Civ.P., motion for judgment on the pleadings. T 
E also renewed its previously filed motion for summary judgment on B.K.W.'s claims of fraud, intentional interference with a contractual relationship, and bad faith. The trial court granted T E's motions and, because T E's counterclaims against B.K.W. were still pending, made its summary judgment final pursuant to Rule 54(b), Ala.R.Civ.P.
B.K.W.'s appeal presents issues relating to (1) whether the trial court erred in granting T E's motion for a judgment on the pleadings on the breach of contract claim; and (2) whether the trial court erred in entering the summary judgment on the fraud claim because, B.K.W. argues, it submitted substantial evidence creating genuine issues of material fact with regard to its fraud claim. B.K.W. does not argue that the trial court erred in entering the summary judgment on B.K.W.'s claims of intentional interference with a contractual relationship and bad faith. *Page 991 
Rule 12(c) allows a party to move for a judgment on the pleadings. When such a motion is made, the trial court reviews the pleadings filed in the case and, if the pleadings show that no genuine issue of material fact is presented, the trial court will enter a judgment for the party entitled to a judgment according to the law. Warren v. Rasco, 457 So.2d 399, 401 (Ala. 1984); McCullough v. Alabama By-Products Corp., 343 So.2d 508,510 (Ala. 1977). At the barest minimum, the pleadings reviewed on a motion for a judgment on the pleadings are the complaint and the answer. A counterclaim and an answer to a counterclaim are also pleadings that may be reviewed in considering such a motion. Rule 7(a), Ala.R.Civ.P.
B.K.W.'s complaint alleged the existence of a contract between B.K.W. and T E. B.K.W. also alleged that T E had breached that contract in several respects, which it described in the complaint, and that T E's breach caused damage to B.K.W. T E's answer alleged that the only contract between the parties was an equipment lease agreement, a copy of which T E attached to its answer. T E denied that its contract with B.K.W. included any of the alleged promises or representations that, according to B.K.W.'s complaint, T E's representatives had made. T E also counterclaimed, alleging that B.K.W. had defaulted on its obligations under the equipment lease. B.K.W. answered the counterclaim and denied that it was in default according to the lease as modified and supplemented by T E's alleged subsequent representations.
These factual disputes within the pleadings require a reversal of the trial court's judgment on the pleadings on the contract count. Warren v. Rasco, supra; McCullough v. AlabamaBy-Products Corp., supra. Because the motion was made and considered on the day trial was scheduled to start, the trial court could not, without giving B.K.W. a reasonable opportunity to respond, consider matters outside the pleadings and thereby convert the motion to one for summary judgment. See Rule 12(c). In the analogous context of converting a Rule 12(b)(6) motion to dismiss into a summary judgment motion, this Court has held that 10 days' notice is required as a reasonable opportunity to respond. Hightower Co. v. United States Fidelity GuarantyCo., 527 So.2d 698 (Ala. 1988). Thus, the judgment on the contract count cannot be construed as a summary judgment, and, as a judgment on the pleadings, it was erroneously entered because the pleadings demonstrated disputes as to material facts.
B.K.W. also argues that the trial court's summary judgment for T E on B.K.W.'s fraud claim must be reversed. This Court applies to a review of a summary judgment the same standard the trial court applies when initially ruling on a motion for summary judgment. DuPont v. Yellow Cab Co. of Birmingham,565 So.2d 190 (Ala. 1990). That standard requires that all evidence be reviewed in the light most favorable to the nonmoving party and that all reasonable doubts be resolved in favor of the nonmoving party. Kenai Oil Gas, Inc. v. Grace PetroleumCorp., 512 So.2d 1347 (Ala. 1987). If, under that standard, the moving party makes prima facie showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law, then a summary judgment in the moving party's favor is proper. Rule 56(c), Ala.R.Civ.P. The nonmoving party may defeat the moving party's prima facie showing of no genuine issue of material fact by submitting "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. ofFlorida, 547 So.2d 870 (Ala. 1989) (defining "substantial evidence"); see § 12-21-12, Ala. Code 1975.
In its motion for summary judgment, T E argued that B.K.W. had defaulted several times by making late payments. T E also argued that B.K.W. was in default when it attempted to exercise its option to purchase the equipment. According to T E's argument, because B.K.W. was in default, B.K.W. could not exercise the option to purchase and, therefore, T E's *Page 992 
alleged misrepresentations relating to the purchase price at the expiration of the lease could not be material.
B.K.W. responds by arguing that T E waived the contract's requirement of prompt payment by not demanding the amounts that were not paid promptly during the course of the contract. The lease called for payments of approximately $347,000, of which B.K.W. paid $295,000 more or less as installments came due. Before the expiration of the lease, B.K.W. offered to pay the $31,000 that was delinquent. Approximately $21,000 was due as a final lease payment, but B.K.W. did not make that payment; it alleges that it did not do so because of T E's conduct at the time that, B.K.W. says, was inconsistent with its prior representations.
B.K.W. alleged and submitted evidence of breaches or misrepresentations by T E in several respects. It says that T E represented that the final rent payment of $21,000 could be made as part of the purchase price, but refused to so include it when B.K.W. attempted to exercise its option to purchase. It alleges that T E agreed to lease two trucks with Cummins engines, but instead provided two trucks with less-expensive Detroit engines. According to B.K.W., it accepted this change based on T E's promise to reduce the purchase price by $42,000, but, B.K.W. says, when it attempted to exercise the option, T E refused to make such a reduction.
Perhaps the most significant dispute is in regard to the amount of use of the equipment during the lease. The lease provides that the rental is based on 176 hours of use per month. Early in the term of the lease, B.K.W. alleges, T E's agents agreed that B.K.W. could use the equipment for longer hours so that B.K.W. could generate enough income to make the rental payments. B.K.W. presented evidence, including a letter from T E, that T E repeatedly represented during the performance of the lease that there would not be a rental charge for the overtime usage if B.K.W. exercised the option to purchase. B.K.W. alleges that, in reliance on these representations, it ran double shifts throughout the lease period. There was also evidence that, at the time it made these representations, T E intended to charge B.K.W. for the overtime usage even if it purchased the equipment. T E did not request additional rental payments for the overtime usage during the performance of the lease, but, during the negotiations over B.K.W.'s attempt to exercise the option to purchase, submitted a bill for approximately $122,000 in overtime usage.
T E responds by pointing out that the lease contains the following nonwaiver clause:
 "Time is of the essence. Lessor's failure at any time to require strict performance by Lessee of any of the provisions hereof shall not waive or diminish Lessor's right thereafter to demand strict compliance therewith or with any other provision. Waiver of any default shall not waive any other default."
T E also points to the purchase option, which applied only if B.K.W. had "paid in full all rentals owing under this equipment lease" and was not in default at the end of the lease.
With regard to waiver of strict compliance with the terms of lease-sale agreements, this Court has stated the following rules:
 "Whether there was a waiver of strict compliance is a question of fact, the burden of proof resting upon the party relying on waiver. Hamner v. Rock Mountain Lake, Inc., 451 So.2d 249 (Ala. 1984); Davis v. Folmar, 203 Ala. 336, 83 So. 60 (1919). It is also well established that the mere acceptance of payments in default under a lease-sale contract does not waive future defaults of the same nature. Rogers v. Newton, 340 So.2d 768 (Ala. 1976). To adopt such a rule 'would penalize the goodhearted vendor for allowing a defaulting vendee to make up his previous defaults.' 340 So.2d at 769.
". . . .
 "The authorities establish that forfeiture provisions in lease-sale agreements are not favored, but that they will be upheld when the lessee-vendee has actual *Page 993 
or constructive notice that strict compliance is necessary. In making these decisions, courts determine whether the vendee had notice of the requirement of strict compliance and whether the vendee had substantially performed his part of the agreement. Eurton v. Smith, 357 So.2d 324 (Ala. 1978). Waiver of strict compliance is a question of fact. Hamner v. Rock Mountain Lake, Inc., 451 So.2d 249 (Ala. 1984); Murray v. Webster, 256 Ala. 248, 54 So.2d 505 (1951); Davis v. Folmar, 203 Ala. 336, 83 So. 60 (1919)."
Killen v. Akin, 519 So.2d 926, 929 (Ala. 1988). See alsoAuto-Plaza, Inc. v. Central Bank of Alabama, 394 So.2d 6 (Ala. 1980); Putnam Realty Auction, Inc. v. Bailes, 371 So.2d 658
(Ala. 1979).
Reviewing the record in the light most favorable to the non-movant, B.K.W., we find substantial evidence that would allow the jury to find that T E waived its contractual right to insist on B.K.W.'s strict compliance with the terms of the lease or is estopped from relying on the nonwaiver clause to defeat the purchase option. The record includes deposition testimony that T E accepted B.K.W.'s partial or late payments of rent without protest, but then did not accept B.K.W.'s offer to make up the deficiency at the time it attempted to exercise the purchase option. There is also evidence that T E knowingly allowed B.K.W. to use the equipment in excess of the number of hours provided for in the lease without making timely demands for overtime payments and that it, in fact, represented that no such demands would be made if B.K.W. purchased the equipment. This evidence directly conflicts with T E's insistence that B.K.W.'s failure to strictly comply with the terms of the lease agreement constituted a default. The jury is best suited to resolve the conflicts in the evidence and determine whether T E is entitled to rely on the nonwaiver clause in refusing to accept B.K.W.'s offer to purchase the equipment.
If the jury finds that T E is not entitled to demand strict compliance, the alleged misrepresentations as to the factors affecting the purchase price will become material. The alleged misrepresentations constituted promises to perform acts in the future, such as deducting $42,000 from the purchase price because of the different engines and not charging for overtime usage. To be fraudulent, a promise to perform in the future must be made with a present intent not to perform. CahabaSeafood, Inc. v. Central Bank of the South, 567 So.2d 1304
(Ala. 1990); Koch v. State Farm Fire Cas. Co., 565 So.2d 226
(Ala. 1990); Trum v. Melvin Pierce Marine Coating, Inc.,562 So.2d 235 (Ala. 1990); H.C. Schmieding Produce Co. v. Cagle,529 So.2d 243 (Ala. 1988); Farmers Merchants Bank v. ClimateMasters Electrical Co., 514 So.2d 1003 (Ala. 1987); and Elrodv. Ford, 489 So.2d 534 (Ala. 1986). The evidence submitted by B.K.W., if believed by the jury, shows a pattern of initial promises coupled with later repudiations. That pattern, and T 
E's denial of the promises, presents at least circumstantial evidence of intent not to perform. Furthermore, there was direct evidence that, at the time it wrote a letter to B.K.W. representing that it would not require overtime payments if B.K.W. purchased the equipment, T E intended to demand such payments. Thus, the evidence is sufficient to present a jury question on the fraud claim. Accordingly, the trial court's summary judgment against B.K.W.'s claim of fraud must also be reversed.
The judgment is reversed as to both the contract claim and the fraud claim, and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur. *Page 994