WOODALL, Justice.
The Court of Civil Appeals affirmed, without an opinion, the summary judgment entered by the Houston Circuit Court in favor of Bennie Gibbs in the action Gibbs filed against Hurbert Maiers and Melissa Maiers pursuant to the Alabama Uniform Residential Landlord and Tenant Act, § 35-9A-101 et seq., Ala.Code 1975 (“the Act”), which became effective January 1, 2007. Maiers v. Gibbs (No. 2080178, Nov. 20, 2009), 65 So.3d 1043 (Ala.Civ.App.2009) (table). This Court granted certiorari review to consider, in pertinent part, whether a landlord and tenant relationship existed between Gibbs and the Maierses when Gibbs filed his action. See § 35-9A-102(c) (“This chapter shall be construed as applying only to the residential landlord and tenant relationship.”). We reverse and remand.
*770 The legal relationship between Gibbs and the Maierses began in August 2004, when Gibbs, as the seller, and the Maiers-es, as the purchasers, entered into a bond-for-title agreement regarding a residence in Houston County (“the agreement”).[1] The purchase price of the residence was $60,000. The Maierses made payments totaling $10,000 and agreed to pay the balance, along with interest at the rate of 7 percent, in 144 monthly payments of $514.19, the first payment being due on September 5, 2004. The Maierses’ initial occupancy of the residence under the agreement was not subject to the Act. See § 35-9A-122(2), Ala.Code 1975 (generally excluding “occupancy under a contract of sale of a dwelling unit or the property of which it is a part” from the application of the Act).
Paragraph 3 of the agreement provided that if the Maierses failed to pay “any [monthly] installment ] within thirty (30) days after receipt of written notice by [Gibbs] of such default and demand for such payment, then [Gibbs] [would] have the right and option to declare [the agreement] null and void by giving [the Maiers-es] written notice thereof.” In such case, according to paragraph 3, the Maierses would “be deemed tenants of [Gibbs] from the date of execution [of the agreement],” and Gibbs would “have the right to the immediate possession of the property.” Further, with regard to the money paid by the Maierses before any such default and declaration, paragraph 3 provided that it would first be applied to the payment of any interest due and then to certain expenditures that Gibbs may have made. Any “balance [would then] be taken and considered as a reasonable rental for said property.”
For three years, the Maierses paid each monthly installment in full. However, in September 2007, the Maierses tendered to Gibbs only $215, promising to pay the balance of $299.19 later. Gibbs accepted the partial payment. In October 2007, the Maierses tendered $514.19, but Gibbs refused to accept the payment.
On October 25, 2007, Gibbs sent a letter to the Maierses, demanding the amounts due for September and October, a late fee for each of those two months, and an amount to pay an air-conditioner-repair bill on the property. The letter did not include any deadline for payment and did not purport to exercise Gibbs’s option to declare the agreement void. The amounts were not paid.
The next correspondence between Gibbs and the Maierses was a letter dated March 19, 2008, to the Maierses from Gibbs’s attorney. The letter stated that Gibbs had elected to declare the agreement void as of April 1, 2008, based upon the Maierses’ failure to make the installment payments and to pay the related late fees. The letter also demanded that the Maierses surrender possession of the residence before April 1 or else “an eviction proceeding” would be initiated.
After receiving the March 19 letter, the Maierses contacted Gibbs, seeking to resolve the issues surrounding the past-due payments. On April 3, 2008, the Maierses and Gibbs entered into a separate agreement by which the Maierses would be given the opportunity to “cure” the breach of the bond for title. More specifically, in order to pay the past-due amounts and to bring the monthly payments up to date, the Maierses agreed to pay, and Gibbs agreed to accept, three payments of *771 $2,208, the first due by April 7; the second by May 6; and the third by June 6.
The Maierses were unable to make the payment that was due by April 7. On that date, Gibbs filed an action for eviction pursuant to the Act. See § 35-9A-461. Then, on April 16, Hurbert’s mother, who was trying to help the Maierses obtain a mortgage loan, paid Gibbs $900, and Gibbs agreed not to pursue the pending eviction action until May 5, 2008.
The Maierses were unable to obtain a mortgage loan. However, in June 2008, Gibbs accepted an installment payment of $514.19 from the Maierses. Ultimately, the Houston District Court entered a judgment in favor of Gibbs in the amount of $5,598.27, representing “back rent” and late fees. The Maierses appealed to the Houston Circuit Court. By complying with the requirements of § 35-9A-461(d), the Maierses were able to retain possession of the residence during the pendency of the appeal.
Shortly after the case was appealed to the circuit court, Gibbs filed a motion for a partial summary judgment, seeking immediate possession of the residence. Gibbs, who never mentioned the Act in his motion, grounded the motion on paragraph 3 of the agreement. In response, the Mai-erses argued, in pertinent part, that Gibbs had waived any right to terminate the agreement by his acceptance of payments after the Maierses’ default. On November 12, 2008, the circuit court granted Gibbs’s motion, awarding him possession of the residence. The circuit court later certified the partial summary judgment as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. Gibbs appealed from the judgment, and the Court of Civil Appeals affirmed the judgment without an opinion. By continuing to make the payments required by § 35-9A-461(d), the Maierses have retained possession of the residence during the pendency of the appeal.
A summary judgment is proper only where it is “show[n] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Rule 56(c)(3), Ala. R. Civ. P. Thus, “ ‘[i]t has been well said that summary judgment may not substitute for the trial of issues of fact.’” Borom v. Thaggard, 926 So.2d 331, 333 (Ala.2005) (quoting State v. Robinson, 510 So.2d 834, 836 (Ala.Civ.App.1987)).
In seeking to bring his action within the scope of the Act, Gibbs relies upon paragraph 3 of the agreement, arguing that, “[o]n the terms of the contract ... the Maiers[es] defaulted, breaching the contract and as a result, [a] landlord/tenant relationship was created.” Gibbs’s brief, at 20. In response, the Maierses argue, in pertinent part, that “the trier of fact should determine if Gibbs ... waived strict compliance with the terms of the [agreement] through his actions.” The Maierses’ brief, at 54. We agree with the Maierses.
A bond for title “is an installment contract for the sale of land.” Rogers v. Triple S Ventures, Inc., 752 So.2d 1220, 1221 (Ala.Civ.App.1998). In such contracts, “vendors often contractually reserve unto themselves the power to treat the contract as having been rescinded upon a default by the purchaser, and after a rescission may retake possession of the property.” 752 So.2d at 1222 (citing Joel Rebecca Donelson, The Bond for Title: A Modem Look at Alabama’s Land Installment Contract, 46 Ala. L.Rev. 137, 140 (1994)). Also, it is not uncommon for installment contracts for the sale of land to provide that, upon a default by the purchaser, all money paid by the purchaser under the contract shall be taken and held as payment of rent for the property. See *772 Eurton v. Smith, 357 So.2d 324, 326 (Ala.1978). In this case, the agreement contains such a provision. The Maierses and Gibbs refer to such provisions, as do our cases, as “forfeiture provisions.” Eurton, 357 So.2d at 326.
The parties agree that “[t]he authorities establish that forfeiture provisions in lease-sale agreements are not favored.” Killen v. Akin, 519 So.2d 926, 929 (Ala.1988). However, “they will be upheld when the [purchaser] has actual or constructive notice that strict compliance is necessary.” Id. “Prior decisions of this court have long recognized that such forfeiture provisions may be waived by the [seller].” Eurton, 357 So.2d at 326. Also, it is well established that “[w]aiver of strict compliance is a question of fact.” Kitten, 519 So.2d at 929.
Absent a default triggering the forfeiture provisions in paragraph 3 of the agreement, there was no landlord-tenant relationship between Gibbs and the Mai-erses. In such a case, the Act simply would not apply. The Maierses correctly argue that the issue whether Gibbs waived the forfeiture provisions by failing to insist upon strict compliance by the Maierses is a question of fact unsuitable for resolution by summary judgment. Indeed, Gibbs agrees that “a question of fact rather than a matter of law is presented.” Gibbs’s brief, at 22. Although Gibbs argues that “after a review of the record, the trial court and the Court of Civil Appeals could have determined that [he] sufficiently communicated an intent to insist upon strict compliance,” id., a summary judgment may not substitute for the trial of issues of fact.
For these reasons, we reverse the judgment of the Court of Civil Appeals and remand the case to that court for the entry of an order consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and LYONS, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
MURDOCK, J., concurs in the result.

. A bond for title is an installment contract for the sale of land, under which "[t]he seller[] [retains] legal title until the buyer pays the purchase price.” Black’s Law Dictionary 193 (8th ed. 2004).